**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| JAMES M. HUGHES,<br>*Plaintiff*,<br>v.<br>DRAFTKINGS INC.; GUS III LLC (D/B/A DRAFTKINGS PREDICTIONS, F/K/A GUS III INC.); RAILBIRD EXCHANGE, LLC (D/B/A DKEX); BLOCKRATIZE, INC.; QCL QUAD CODE USA CORP.; QCX LLC (D/B/A POLYMARKET US); QC CLEARING LLC (D/B/A POLYMARKET CLEARING); CHICAGO MERCANTILE EXCHANGE INC.; NORTH AMERICAN DERIVATIVES EXCHANGE, INC. (D/B/A CRYPTO.COM DERIVATIVES NORTH AMERICA); BITNOMIAL CLEARINGHOUSE, LLC; WINTERMUTE TRADING LTD.; JUMP TRADING LLC; DRW HOLDINGS LLC; IMC-CHICAGO, LLC; GALAXY DIGITAL TRADING, LLC; VIRTU FINANCIAL INC.; and JOHN DOES 1-10,<br>*Defendants*. | Case No.: 2:26-cv-03838-RMG<br>(Removed from the Court of Common Pleas, Ninth Judicial Circuit, Charleston County, South Carolina, Case No. 2026-CP-10-04063) |

**NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1331, 1332, 1441(a), and 1446, Defendants DraftKings Inc., Railbird Exchange, LLC (d/b/a DKeX) ("DKeX"), and GUS III LLC (d/b/a DraftKings Predictions) (collectively, the "DraftKings Entities"), by and through their attorneys, hereby remove the above-captioned action from the Court of Common Pleas, Ninth Judicial Circuit,

Charleston County, South Carolina, to the United States District Court for the District of South Carolina. All named Defendants still party to the lawsuit consent to this removal.[1]

This Notice of Removal is not intended to constitute and should not be construed as constituting a general appearance or appearance on the merits of the DraftKings Entities or any other Defendant in this matter. By filing or consenting to this Notice of Removal, Defendants do not waive any defenses they have to this action whether in state or federal court, including, but not limited to, improper service of process and/or lack of personal jurisdiction. The DraftKings Entities reserve the right to amend or supplement this Notice of Removal.

In support of removal, the DraftKings Entities state as follows:

## BACKGROUND

1. Prediction markets, national exchanges where users trade a kind of derivative financial instrument known as event contracts, are an important component of modern, federally regulated financial markets. Countless Americans rely on these markets to obtain accurate information about consequential events in politics, finance, technology, news, and sports. Through the Commodity Exchange Act ("CEA"), Congress placed these markets squarely within a comprehensive federal regulatory regime and vested exclusive supervisory authority in the Commodity Futures Trading Commission ("CFTC").

[1] Blockratize Inc., QCL Quad Code USA Corp., QCX LLC (d/b/a Polymarket US), and QC Clearing LLC (d/b/a Polymarket Clearing) (collectively, the "Polymarket Defendants") consent to removal and are anticipated to file their own notice of removal in this action. In addition to the named Defendants, Plaintiff has named as defendants "Does 1[–]10." *See* Compl. ¶¶ 8, 46. Because "[t]he general rule that all defendants must consent is disregarded when the non-joining defendants are unknown," "[r]emoval does not require the consent of the John Doe Defendants." *Creed v. Virginia*, 596 F. Supp. 2d 930, 933 n.1 (E.D. Va. 2009); *accord*, *e.g.*, *Holz v. Terre Haute Reg'l Hosp.*, 123 F. App'x 712, 714 (7th Cir. 2005); *Green v. Am. Online (AOL)*, 318 F.3d 465, 470 (3d Cir. 2003).

2. DKeX operates one such market, allowing customers to trade certain event contracts. An event contract is a type of "swap," a derivative contract where two parties agree to exchange—swap—payments with each other based on a pre-agreed formula, such as the price of crude oil or interest rates. In the case of event contracts, the payment "may be based on eventualities and measures as varied as the world's population in the year 2050, the results of political elections, or the outcome of particular entertainment events." CFTC, *Concept Release On The Appropriate Regulatory Treatment Of Event Contracts*, 73 Fed. Reg. 25,669, 25,669 (May 7, 2008).

3. The CFTC designated DKeX as a contract market in June 2025.[2] To obtain that designation, the CFTC required DKeX to demonstrate its compliance with stringent regulations governing derivatives trading on federal exchanges, including with respect to market integrity, market transparency, financial safeguards, and customer protection. *See* 7 U.S.C. §§ 7(a), 7(d), 8(a). Until recently, DraftKings Predictions operated as a CFTC-registered "introducing broker," another category within the CEA's derivatives-trading framework. 7 U.S.C. § 1a(31). The company now operates as a CFTC-registered "futures commission merchant." *Id.* § 1a(28).

4. DKeX lists event contracts for trading subject to and in compliance with the CFTC's regulatory oversight and federal law. DKeX's event contracts include contracts concerning the outcomes of athletic competitions. Before listing for trading each new kind of event contract, DKeX certifies to the CFTC that the contract complies with the CEA and CFTC regulations. *See* 7 U.S.C. § 7a-2(c)(1); 17 C.F.R. § 40.2(a). The CFTC may investigate, stay, or

[2] Commodity Futures Trading Comm'n, *Designated Contract Markets (DCM): Railbird Exchange, LLC*, https://www.cftc.gov/IndustryOversight/IndustryFilings/TradingOrganizations/50090 (last visited Aug. 27, 2026).

amend contracts even after listing, *see* 17 C.F.R. § 40.2(c), but it has not done so for any of the contracts certified by DKeX.

5. The CFTC's regulatory authority over these markets is both longstanding and exclusive. The CFTC has regulated event contracts since at least 1992, when it permitted a "real-money event market[]"—which continues to operate today—to offer "contracts based on political elections," among other subjects. 73 Fed. Reg. at 25670 & n.4. The CEA classifies event contracts as "swaps." *See* 7 U.S.C. § 1a(47)(A)(ii). And when it comes to "swaps" "traded or executed on a contract market designated" under the Act, the CFTC has "exclusive jurisdiction." *Id.* § 2(a)(1)(A). Congress made the CFTC's authority exclusive because it recognized that regulation of nationwide exchanges under "different State laws" would lead to "total chaos." *Hr'gs Before the S. Comm. on Agric. & Forestry*, 93d Cong. 685 (1974).

6. Plaintiff James M. Hughes sued Defendants on July 29, 2026, raising a single cause of action under South Carolina's Statute of Anne, alleging that the sports-related event contracts traded on DKeX's federal exchange constitute "illegal" gambling. Compl. ¶ 6. The South Carolina Statute of Anne allows "any person" to sue the "winner" of "cards, dice table or any other game whatsoever" for four times the amount lost by "any other person," S.C. Code Ann. §§ 32-1-10, 32-1-20, but it does not apply to "gambling activities" that are "authorized by law," S.C. Code Ann. § 32-1-60.

7. This Court has diversity jurisdiction, *see* 28 U.S.C. § 1332, as well as federal question jurisdiction, *see id.* § 1331.

8. This Court has jurisdiction under 28 U.S.C. § 1332 because Plaintiff and Defendants are citizens of different States and because Plaintiff seeks more than $75,000. *First*, complete diversity exists because Plaintiff is a citizen of South Carolina, and each Defendant is a

citizen of one or more of Nevada, Massachusetts, Delaware, New York, New Jersey, Illinois, Wisconsin, Wyoming, China, France, Russia, Singapore, and the United Kingdom. *Second*, the relief Plaintiff seeks is well over $75,000. Plaintiff alleges that "thousands of individuals within South Carolina have lost—and continue to lose—more than $50 at any time or sitting" from (what he calls) "gambling" with Defendants, Compl. ¶ 149, repeatedly over the course of the last year, *id.* ¶¶ 25, 32, 39, 41–52. He seeks "as damages four times that value." *Id*. Prayer for Relief ¶ C. Additionally, he requests an injunction which would impose costs on Defendants (and even on DKeX alone) that would far exceed $75,000.

9. This Court also has jurisdiction under 28 U.S.C. § 1331. Plaintiff's purported state-law cause of action raises the question whether the event contracts DKeX offers are legal, which necessarily turns on disputed questions about the meaning and scope of the federal CEA. To succeed on his claim, Plaintiff must establish that DKeX's sports-related event contracts are illegal under the law governing their validity. This will require Plaintiff to grapple with the legality of these event contracts under the CEA. Particularly given Plaintiff's efforts to reshape the balance of federal-state authority over derivatives trading, this Court is the proper forum to resolve those questions of federal law.

**FIRST GROUND FOR REMOVAL: DIVERSITY JURISDICTION**

10. This Court would have original jurisdiction over this action under 28 U.S.C. § 1332(a)(3) because it is a civil action between "citizens of different States and in which citizens or subjects of a foreign state are additional parties," and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(3); *see Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989) (noting that § 1332(a)(3) applies "when a citizen of

one State sues both aliens and citizens of a State (or States) different from the plaintiff's"). The action is therefore removable under 28 U.S.C. § 1441(a) and (b).

11. *First*, there is complete diversity of citizenship between the parties. "The complete diversity rule of § 1332 requires that the citizenship of each plaintiff be different from the citizenship of each defendant." *Montanaro v. State Farm Mut. Auto. Ins. Co.*, 29 F. Supp. 3d 662, 665–66 (D.S.C. 2014). "For the purposes of diversity jurisdiction, a person is a citizen of the state in which he or she is domiciled," *Castellanos v. Fluor-Lane S.C., LLC*, 2022 WL 3334609, at *2 (D.S.C. Aug. 12, 2022); a corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business," 28 U.S.C. § 1332(c)(1); and a limited liability company is a citizen of every State in which any of its members is a citizen, *Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011).

12. Plaintiff is a citizen of South Carolina. Plaintiff is a natural person domiciled in South Carolina. Plaintiff is suing in his own name under S.C. Code Ann. § 32-1-20 to recover on behalf of the South Carolina counties in which allegedly illegal gambling has occurred. Compl. ¶¶ 55, 76, 78, Prayer for Relief ¶¶ B, C.

13. Defendant DraftKings Inc. is a citizen of Nevada and Massachusetts. DraftKings Inc. is a corporation organized under the laws of Nevada with its principal place of business in Boston, Massachusetts. *See* Compl. ¶ 28.

14. Defendant GUS III LLC (d/b/a DraftKings Predictions) is a citizen of Nevada and Massachusetts. GUS III LLC is a Nevada limited liability company. Its sole member is GUS Holdings LLC, a Nevada limited liability company and a citizen of Nevada and Massachusetts.

GUS Holdings LLC's sole member is DraftKings Inc., a citizen of Nevada and Massachusetts. *See* Compl. ¶¶ 28–29.

15. Defendant Railbird Exchange, LLC (d/b/a DKeX) is a citizen of Nevada and Massachusetts. Railbird Exchange, LLC is a Nevada limited liability company. Its sole member is Railbird Technologies LLC, a Nevada limited liability company and a citizen of Nevada and Massachusetts. Railbird Technologies LLC's sole member is GUS Holdings LLC, a Nevada limited liability company and a citizen of Nevada and Massachusetts. GUS Holdings LLC's sole member is DraftKings Inc., a citizen of Nevada and Massachusetts. *See* Compl. ¶¶ 28–30.

16. Defendant Blockratize, Inc. is a citizen of Delaware and New York. Blockratize, Inc. is a corporation organized under the laws of Delaware with its principal place of business in New York. *See* Compl. ¶ 34.

17. Defendant QCL Quad Code USA Corp. is a citizen of Delaware and New York. QCL Quad Code USA Corp. is a corporation organized under the laws of Delaware with its principal place of business in New York. *See* Compl. ¶ 35.

18. Defendant QCX LLC is a citizen of Delaware and New York. QCX LLC is a Delaware limited liability company. Its sole member is QCL Quad Code USA Corp., a citizen of Delaware and New York. *See* Compl. ¶¶ 35–36.

19. Defendant QC Clearing LLC is a citizen of Delaware and New York. QC Clearing LLC is a Delaware limited liability company. Its sole member is QCL Quad Code USA Corp., a citizen of Delaware and New York. *See* Compl. ¶¶ 35, 37.

20. Defendant Chicago Mercantile Exchange Inc. is a citizen of Delaware and Illinois. Chicago Mercantile Exchange Inc. is a corporation organized under the laws of Delaware with its principal place of business in Chicago, Illinois. *See* Compl. ¶ 41.

21. Defendant North American Derivatives Exchange, Inc. (d/b/a OG) is a citizen of Delaware and Illinois. North American Derivatives Exchange, Inc. is a corporation organized under the laws of Delaware with its principal place of business in Chicago, Illinois. *See* Compl. ¶ 43.

22. Defendant Bitnomial Clearinghouse, LLC is a citizen of Delaware and Wyoming. Bitnomial Clearinghouse, LLC is a Delaware limited liability company. *See* Compl. ¶ 45. Its sole member is Bitnomial Exchange, LLC, a limited liability company whose sole member is Bitnomial, LLC, a limited liability company whose sole member is Payward, Inc. Payward, Inc. is a corporation organized under the laws of Delaware with its principal place of business in Cheyenne, Wyoming.

23. Defendant Wintermute Trading Ltd. is a citizen of the United Kingdom. Wintermute Trading Ltd. is a foreign corporation organized under the laws of the United Kingdom with its principal place of business in London, United Kingdom. *See* Compl. ¶ 48.

24. Defendant Jump Trading LLC is a Delaware limited liability company, *see* Compl. ¶ 50, that, for diversity jurisdiction purposes, is a citizen of all jurisdictions in which its members and the members of all limited liability companies above it in its chain of ownership are citizens, without regard to whether such members have voting rights, the ability to control, and the extent of their ownership interests. Accordingly, solely for diversity jurisdiction purposes, it is considered a citizen of Illinois, New Jersey, New York, Wisconsin, China, France, Russia, Singapore, and the United Kingdom.

25. Defendant Galaxy Digital Trading, LLC is a citizen of Delaware and New York. Galaxy Digital Trading, LLC is a Delaware limited liability company. *See* Compl. ¶ 51. Its sole

member is Galaxy Digital Inc., a corporation organized under the laws of Delaware with its principal place of business in New York, New York.

26. Defendant Virtu Financial Inc. is a citizen of Delaware and New York. Virtu Financial Inc. is a corporation organized under the laws of Delaware with its principal place of business in New York, New York. *See* Compl. ¶ 52.

27. Defendants John Does 1–10 are unnamed defendants sued under fictitious names. "In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b)(1). The citizenship of John Does 1–10 is therefore irrelevant.

28. Complete diversity therefore exists under 28 U.S.C. § 1332: Plaintiff is a citizen of South Carolina, but no Defendant is a citizen of South Carolina.[3]

29. *Second*, the amount in controversy exceeds $75,000. Plaintiff asserts that Defendants are liable under South Carolina's Statute of Anne and seeks "as damages four times [the] value" of "all" purportedly "illegal winnings" collected by Defendants from South Carolina residents, together with an accounting and injunctive relief. Compl. ¶ 149, Prayer for Relief ¶¶ B, C, F. Although the DraftKings Entities deny that Plaintiff is entitled to any relief, the relief demanded in the Complaint far exceeds $75,000, "exclusive of interest and costs." 28 U.S.C. § 1332(a).

30. To start, the monetary relief sought easily clears the $75,000 floor. The Complaint alleges that "thousands of individuals within South Carolina have lost—and continue to lose—more than $50 at any time or sitting by playing at games of chance (i.e., gambling) with

[3] DRW Holdings LLC was voluntarily dismissed from this lawsuit on August 27, 2026. *See* Ex. 5. Likewise, IMC-Chicago, LLC was voluntarily dismissed from this lawsuit on August 31, 2026. *See id.*

Defendants," Compl. ¶ 149; that "South Carolina residents have regularly gambled (and lost) over $50 at a single time or sitting" on Defendants' platforms, *id.* ¶ 25; and that, in the last year, "South Carolina residents have periodically lost over $50 at a single time or sitting" to each of the Defendants, *id.* ¶¶ 32, 39, 41–52. The Complaint further alleges that Defendants' platforms have operated continuously in South Carolina for months, *see*, *e.g.*, *id.* ¶¶ 101, 105–06, and that a single week during the 2026 FIFA World Cup generated more than $11 billion in annualized trading volume for DKeX alone, *id.* ¶ 103, with "nearly 70%" of purported "bets" being "placed in states where gambling is illegal," *id.* ¶ 106.

31. Alleged damages of four times the value of alleged winnings and losses on trading volume of this breadth—thousands of "losses" of $50 or more, sustained repeatedly over the course of a year—alone put well over $75,000 in controversy. *See R.L. Jordan Oil Co. of N.C., Inc. v. Boardman Petroleum, Inc.*, 23 F. App'x 141, 145 n.3 (4th Cir. 2001) ("When calculating the amount in controversy, the district court should consider any special or punitive damages, such as treble damages, available to" the plaintiff.); *accord Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 460 (D. Md. 2013); *Russo v. Eastwood Constr. Partners, LLC*, 2023 WL 2386453, at *7 (D.S.C. Mar. 7, 2023).

32. Additionally, the value of the injunctive relief sought exceeds $75,000. "[T]he value of an injunction for amount in controversy purposes" is "the larger of . . . the injunction's worth to the plaintiff or its cost to the defendant." *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 639 (4th Cir. 2010). Plaintiff seeks "injunctive relief enjoining Defendants from continuing their illegal operations in the state." Compl. Prayer for Relief ¶ F. The cost to Defendants of the demanded injunction—including forgone revenue from South Carolina users, the cost of identifying and excluding South Carolina residents from the platforms, and the burden of the

quarterly county-by-county accounting demanded until Defendants "cease their illegal operations in the state," Compl. Prayer for Relief ¶ B—would far exceed $75,000.

33. Because there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs, this Court has original jurisdiction under 28 U.S.C. § 1332 and this action may be removed under 28 U.S.C. § 1441.

**SECOND GROUND FOR REMOVAL: FEDERAL QUESTION JURISDICTION**

34. This case also belongs in federal court because it necessarily turns on disputed and substantial questions of federal law. *See* 28 U.S.C. § 1331.

35. Plaintiff's claim requires the adjudication of federal-law issues that are "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313–14 (2005)).

36. Plaintiff's claim necessarily requires proof that the event contracts at issue are illegal gambling—and that claim cannot be adjudicated without deciding disputed and substantial questions of federal law.

37. DKeX operates a lawful, nationwide designated contract market subject to the exclusive jurisdiction of the CFTC. The core question is whether Plaintiff may nonetheless recover under the State's Statute of Anne based on contracts traded on DKeX's federally licensed derivatives exchange—and the federally licensed derivatives exchanges operated by or affiliated with other Defendants. That question cannot be answered without interpreting the scope and effect of the CFTC's exclusive jurisdiction under the CEA.

38. The CFTC has confirmed through litigation, amicus briefs, and public statements that event contracts traded on designated contract markets are lawful and fall squarely within the agency's exclusive federal authority. *See*, *e.g.*, Complaint, *United States v. Kentucky*, No. 3:26-cv-49 (E.D. Ky. June 23, 2026), Dkt. 1; Complaint, *United States v. Arizona*, No. 2:26-cv-02246 (D. Ariz. Apr. 2, 2026), Dkt. 1; Amicus Br. of CFTC, *KalshiEX LLC v. Schuler*, No. 26-3196 (6th Cir. May 12, 2026), Dkt. 31. Two courts have already granted a request from the CFTC to enjoin state interference with event-contract markets. *See United States v. Minnesota*, 2026 WL 2150211, at *1 (D. Minn. July 27, 2026); *KalshiEX LLC v. Johnson*, 832 F. Supp. 3d 954, 958, 967–68 (D. Ariz. 2026). And the Third Circuit has agreed that regulatory authority over event contracts belongs to the CFTC, not the States. *See KalshiEX LLC v. Flaherty*, 172 F.4th 220, 228 (3d Cir. 2026).

39. Plaintiff does not dispute that the DraftKings Entities are federally licensed or that the CFTC has authorized the listing of DKeX's event contracts. But Plaintiff insists that he—not Congress or the CFTC—can tell which federally regulated products are truly "legitimate" and which "illegal." Compl. ¶ 6. Plaintiff does not explain how much of the Nation's trillion-dollar derivatives industry he believes is subject to South Carolina's ancient card-playing prohibition. Instead, he focuses on the sports-related event contracts offered by DKeX and other Defendants. *See id*. ¶¶ 16, 61, 103, 104, 106.

40. These kinds of contracts, however, are an especially unusual choice of target: As Plaintiff concedes, federal law expressly entrusts *the CFTC*—not Plaintiff (or the State of South Carolina)—with the task of determining whether to permit the listing of "swaps" "'involv[ing] . . . gaming.'" Compl. ¶ 146 (quoting 17 C.F.R. § 40.11(a)); *see* 7 U.S.C. § 7a-2(c)(5)(C) (similar); CFTC, *Prediction Markets; Public Interest Determinations*, 91 Fed. Reg. 35,806, 35,815–16,

35,835–37, 35,853, 35,870–71 (June 12, 2026) (setting out the CFTC's view that sports-related event contracts may be listed on designated contract markets and proposing new regulations to supply further clarity).

41. Plaintiff dismisses the provisions of the CEA as "legal arcana." Compl. ¶ 141. Yet he asserts a single cause of action under South Carolina's Statute of Anne, a law that "pre-dates . . . the telephone . . . and indeed the Four Corners of Law." *Id.* ¶ 22. The Statute of Anne takes aim at those who "play[] at cards, dice table or any other game whatsoever." S.C. Code Ann. § 32-1-10. It allows "any person" to sue the "winner" of such games for four times the amount lost by "any other person," so long as the loser has not sued within three months. S.C. Code Ann. § 32-1-20. But this recovery provision "appl[ies] only to those gambling activities not authorized by law." S.C. Code Ann. § 32-1-60. In other words, the statute "allow[s] for recovery of gambling losses only where the gambling activity which resulted in the loss is unlawful." *Joytime Distribs. & Amusement Co. v. State*, 528 S.E.2d 647, 655 (S.C. 1999); *accord Proctor v. Whitlark & Whitlark, Inc.*, 778 S.E.2d 888, 893 (S.C. 2015). And, under South Carolina law, Plaintiff bears the burden of proving that Defendants engaged in "a contract or transaction" covered by the Statute of Anne. *Francis v. Mauldin*, 55 S.E.2d 337, 338 (S.C. 1949).

42. Discharging that burden necessarily requires Plaintiff to contend with federal law. Determining whether DKeX's event contracts are "gambling activit[y] not authorized by law," S.C. Code Ann. § 32-1-60, or instead legally authorized derivatives transactions, involves an inquiry into both state and federal law, *see Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 157 (1982) ("[T]he Constitution, laws, and treaties of the United States are as much a part of the law of every State as its own local laws and Constitution.") (quotation marks omitted); *cf. Patterson v. Shumate*, 504 U.S. 753, 758 (1992) (interpreting the statutory phrase "'applicable

nonbankruptcy law'" "to include federal as well as state law" because "[t]he text contains no limitation . . . relating to the source of the law"). "As a result, whether the contracts at issue are unlawful gambling contracts—or instead federally authorized event contracts—cannot be resolved by reference to [South Carolina] law alone." *Ga. Gambling Recovery LLC v. Kalshi Inc.*, 2026 WL 279375, at *3 (M.D. Ga. Feb. 3, 2026).

43. Under the CEA, which governs the contracts' validity, the event contracts at issue are authorized, lawful swaps. *Cf. Fiberlink Commc'ns Corp. v. Magarity*, 24 F. App'x 178, 182 (4th Cir. 2001) ("The law governing a contract is the law relating to the validity and interpretation of the contract itself, rather than the law regarding performance and breach."). The CEA defines "swap" broadly, 7 U.S.C. § 1a(47)(A), and vests the CFTC with "exclusive jurisdiction" over swap transactions conducted on CFTC-designated exchanges, *id.* § 2(a)(1)(A). That includes the authority to determine whether a listed contract "involve[s]" "gaming" and, if so, whether to prohibit the listing. *Id.* § 7a-2(c)(5)(C)(i). The CFTC has not prohibited the listing of any event contracts relevant here.

44. Establishing that DKeX's event contracts (and those of other Defendants) are "not authorized by law," S.C. Code Ann. § 32-1-60, therefore "necessarily depends on the interpretation and application of the CEA and the scope of the CFTC's exclusive jurisdiction." *Ga. Gambling*, 2026 WL 279375, at *3. Plaintiff's "right to relief is [thus] inextricably intertwined with federal law." *Old Dominion Elec. Coop. v. PJM Interconnection, LLC*, 24 F.4th 271, 286 (4th Cir. 2022).

45. Plaintiff appears to concede that whether the challenged event contracts are "illegal gambling" instead of federally authorized "swaps" under the CEA is necessarily part of his claim. Plaintiff devotes an entire section of the Complaint to the legality of Defendants' swaps under the CEA. *See* Compl. ¶¶ 140–46. There, he "disputes that Defendants' 'event contracts' are swaps"

and "that they would be permissible under the Commodity Exchange Act even if they were swaps." *Id*. ¶ 140 n.7. And he supplies his views about the relevance of the CFTC's power to prohibit agreements involving gaming. *Id.* ¶¶ 140, 146.

46. Allowing a state court to adjudicate the legality of—and award a total of four times the alleged damages based on the trading of—federally regulated swaps would fracture national derivatives markets and undermine the uniformity Congress deemed essential by granting the CFTC exclusive jurisdiction over these markets. Upholding federal jurisdiction here does not disrupt the federal-state balance; it enforces it.

**ALL REMOVAL REQUIREMENTS ARE MET**

47. Based on the foregoing facts and allegations, this Court has jurisdiction over this action because it involves a controversy that exceeds the sum of $75,000 and because Plaintiff and all Defendants are citizens of different States.

48. Based on the foregoing facts and allegations, this Court also has original jurisdiction over this action because the Complaint arises under federal law and necessarily raises substantial, disputed federal questions that belong in a federal court.

49. Venue is proper in this Court because the United States District Court for the District of South Carolina is the federal judicial district embracing the Court of Common Pleas, Ninth Judicial Circuit, Charleston County, South Carolina, where Plaintiff originally commenced the state court action. 28 U.S.C. §§ 1441(a), 1446(a).

50. Removal is timely because the DraftKings Entities received service on August 3, 2026, so it has not been more than 30 days since service of Plaintiff's Complaint. 28 U.S.C. § 1446(b)(1), (2)(B).

51. All other named Defendants still party to the lawsuit—Blockratize, Inc.; QCL Quad Code USA Corp.; QCX LLC (d/b/a Polymarket US); QC Clearing LLC (d/b/a Polymarket Clearing); Chicago Mercantile Exchange Inc.; North American Derivatives Exchange, Inc. (d/b/a OG); Bitnomial Clearinghouse, LLC; Wintermute Trading Ltd.; Jump Trading LLC; Galaxy Digital Trading, LLC; Virtu Financial Inc.—consent to removal. The Polymarket Defendants[4] consent to removal of this action, and are anticipated to file their own notice of removal in this action.

52. A copy of Plaintiff's Complaint is attached hereto as Exhibit 1, along with the State Court Summons for all Defendants as Exhibit 2, the State Court Appearances as Exhibit 3, the Affidavits of Service for all Defendants as Exhibit 4, the Notices of Voluntary Dismissal as to DRW Holdings LLC and IMC-Chicago, LLC as Exhibit 5, and the state court action docket sheet as Exhibit 6, which collectively make up the entire state court file. 28 U.S.C. § 1446(a).

53. The DraftKings Entities will provide Plaintiff with written notice of this filing and will promptly file a true and correct copy of this Notice of Removal with the Clerk of the Court of Common Pleas, Ninth Judicial Circuit. The Notice of Filing of Notice of Removal to be filed with the Court of Common Pleas, Ninth Judicial Circuit, is attached as Exhibit 7. *See* 28 U.S.C. § 1446(d); Loc. R. 83.IV.01.

54. By filing this Notice of Removal, the DraftKings Entities and other Defendants do not waive any objections as to notice, service, personal jurisdiction, venue, or any other defenses. The DraftKings Entities and other Defendants reserve all of their defenses, and this Notice of

---

[4] The Polymarket Defendants are: Blockratize Inc.; QCL Quad Code USA Corp.; QCX LLC (d/b/a Polymarket US); and QC Clearing LLC (d/b/a Polymarket Clearing). *See supra* n.1.

Removal is filed subject to full reservation of any rights and all objections, arguments, and defenses to Plaintiff's Complaint.

## CONCLUSION

55. The DraftKings Entities hereby remove this action and respectfully request that the Court retain jurisdiction for all further proceedings in this matter.

Dated: September 2, 2026

Respectfully submitted,

*/s/ J. Rutledge Young, III*
J. Rutledge Young, III (Federal Bar No. 7260)
C. Wilson Daniel (Federal Bar No. 13579)
DUFFY & YOUNG, LLC
96 Broad Street
Charleston, South Carolina 29401
Telephone: (843) 720-2044
Fax: (843) 720-2047
ryoung@duffyandyoung.com
wdaniel@duffyandyoung.com

Timothy P. Crudo*
Charmaine G. Yu*
Marcia V. Valente*
Rachel R. Suhr*
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, California 94104
Telephone: (415) 391-4800
tcrudo@coblentzlaw.com
cyu@coblentzlaw.com
mvalente@coblentzlaw.com
rsuhr@coblentzlaw.com

Orin Snyder*
GIBSON DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
osnyder@gibsondunn.com

Jacob T. Spencer*
Adam I. Steene*
Abby H. Walters*
GIBSON DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
jspencer@gibsondunn.com
asteene@gibsondunn.com
ahwalters@gibsondunn.com

**Applications for pro hac vice admission forthcoming*

*Attorneys for Defendants DraftKings Inc.; GUS III LLC; and Railbird Exchange, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 2, 2026, I filed this document and all exhibits through the ECF system and that notice will be electronically sent to all registered participants identified in the Notice of Electronic Filing, that paper copies will be sent via First-Class Mail to all non-registered participants, and that copies will be sent by electronic mail to the following:

T. David Hoyle
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mt. Pleasant, South Carolina 29464
dhoyle@motleyrice.com

William H. Narwold
MOTLEY RICE LLC
20 Church Street, 17th Floor
Hartford, Connecticut 06103
bnarwold@motleyrice.com

Previn Warren
Abigail Burman
Nelson Drake
MOTLEY RICE LLC
401 9th Street NW Suite 630
Washington, D.C. 20004
pwarren@motleyrice.com
aburman@motleyrice.com
ndrake@motleyrice.com

*Attorneys for Plaintiff*

*/s/ J. Rutledge Young, III*
J. Rutledge Young, III