**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| JAMES M. HUGHES,<br>*Plaintiff*,<br>v.<br>DRAFTKINGS INC.; GUS III LLC (D/B/A DRAFTKINGS PREDICTIONS, F/K/A GUS III INC.); RAILBIRD EXCHANGE, LLC (D/B/A DKEX); BLOCKRATIZE, INC.; QCL QUAD CODE USA CORP.; QCX LLC (D/B/A POLYMARKET US); QC CLEARING LLC (D/B/A POLYMARKET CLEARING); CHICAGO MERCANTILE EXCHANGE INC.; NORTH AMERICAN DERIVATIVES EXCHANGE, INC. (D/B/A CRYPTO.COM DERIVATIVES NORTH AMERICA); BITNOMIAL CLEARINGHOUSE, LLC; WINTERMUTE TRADING LTD.; JUMP TRADING LLC; DRW HOLDINGS LLC; IMC-CHICAGO, LLC; GALAXY DIGITAL TRADING, LLC; VIRTU FINANCIAL INC.; and JOHN DOES 1-10,<br>*Defendants*. | Case No. 26 Civ. 2:26-cv-03838-RMG<br>(Removed from the Court of Common Pleas, Ninth Judicial Circuit, Charleston County, South Carolina, Case No. 2026-CP-10-04063) |

**THE POLYMARKET ENTITIES' NOTICE OF JOINDER AND REMOVAL**

Defendants Blockratize Inc.; QCL Quad Code USA Corp.; QCX LLC (d/b/a Polymarket US); and QC Clearing LLC (d/b/a Polymarket Clearing) (collectively, the "Polymarket Entities"), by and through their attorneys, hereby join the Notice of Removal previously filed in this action (*see* Dkt. 1) by Defendants DraftKings Inc., Railbird Exchange, LLC (d/b/a DKeX) ("DKeX"), and GUS III LLC (d/b/a DraftKings Predictions) (collectively, the "DraftKings Entities"), and provide notice of an additional basis for removal under the federal officer removal statute, 28 U.S.C. § 1442(a)(1) (the "Notice").

This Notice of Joinder and Removal is not intended and should not be construed as constituting the general appearance or appearance on the merits of the Polymarket Entities in this matter. By filing this Notice of Removal, the Polymarket Entities do not waive any defenses they have to this action whether in state or federal court, including, but not limited to, improper service of process and/or lack of personal jurisdiction. The Polymarket Entities reserve the right to amend or supplement this Notice of Removal.

In support of this removal, the Polymarket Entities state as follows:

**BACKGROUND**

1. Prediction markets are national exchanges where participants trade event contracts—derivative financial instruments whose value depends on the outcome of a specified future event. Through the Commodity Exchange Act ("CEA"), Congress placed these markets within a comprehensive federal regulatory regime and granted exclusive supervisory authority to the Commodity Futures Trading Commission ("CFTC"). *See* 7 U.S.C. §§ 2(a)(1)(A), 7(a).

2. Polymarket US operates one such market: on July 9, 2025, the CFTC formally approved Polymarket US as a designated contract market ("DCM") under the CEA, reflecting a federal finding that Polymarket US satisfies the extensive and stringent requirements governing derivatives trading on federal exchanges, including market integrity, transparency, financial safeguards, surveillance, and customer protection. *See* Order of Designation, *In re Application of QCX LLC for Designation as a Contract Market*, at 1–3 (CFTC July 9, 2025); 7 U.S.C. §§ 7(a), 7(d), 8(a).

3. The CEA classifies event contracts as "swaps," defining "swap" broadly to include any transaction "dependent on the occurrence, nonoccurrence, or the extent of the occurrence of an event or contingency associated with a potential financial, economic, or commercial

consequence." 7 U.S.C. § 1a(47)(A)(ii). The CFTC itself has consistently maintained that event contracts—including sports-related event contracts—are "swaps," *see* CFTC, Prediction Markets; Public Interest Determinations, 91 Fed. Reg. 35,806, 35,815–16 (proposed June 12, 2026).

4. The CFTC's regulatory authority over swaps traded on DCMs is exclusive. The CEA provides that the CFTC shall have "exclusive jurisdiction" over "transactions involving swaps . . . traded or executed on a contract market designated pursuant to section 7 of this title" and strips states of authority to regulate transactions "subject to regulation by the Commission." 7 U.S.C. § 2(a)(1)(A). The CFTC has vigorously enforced that exclusivity by filing lawsuits against multiple states seeking to restrain federally regulated prediction markets, warning that such efforts would subject CFTC-regulated exchanges to "a fragmented patchwork of state regulations." CFTC Press Release No. 9206-26 (Apr. 2, 2026); *see also United States* v. *Minnesota*, 2026 WL 2150211, at *1 (D. Minn. July 27, 2026) (enjoining state interference); *KalshiEX LLC* v. *Johnson*, 832 F. Supp. 3d 954, 958 (D. Ariz. 2026) (same).

5. In operating a DCM, Polymarket US functions as a "self-regulatory organization" ("SRO") exercising delegated governmental authority from the CFTC. *See* 17 C.F.R. § 1.3; *Barry* v. *Cboe Glob. Mkts., Inc.*, 42 F.4th 619, 625 (7th Cir. 2022) (Congress granted contract markets "a form of delegated [government] discretion"). As an SRO, Polymarket US does not merely comply with the federal regulatory regime—it is a frontline regulator that performs functions the CFTC itself would otherwise carry out, including establishing and enforcing access requirements, certifying event contracts for listing, preventing manipulation through market surveillance, and promulgating rules to protect market participants from abusive practices. *See* 7 U.S.C. §§ 7(d)(2), (4), (12), 7a-2(c)(1).

6. On July 29, 2026, Plaintiff James M. Hughes filed a Complaint in the Court of Common Pleas, Ninth Judicial Circuit, Charleston County, South Carolina, asserting a single claim under South Carolina's Statute of Anne, alleging that sports-related event contracts constitute illegal gambling. *See* Compl. ¶ 83, Ex. 1 to Notice of Removal, Dkt. 1.

7. On September 2, 2026, the DraftKings Entities removed this action to this Court. *See* Dkt. 1 (the "DraftKings Entities' Notice of Removal").

8. The Polymarket Entities hereby join in, and expressly adopt and incorporate by reference, the DraftKings Entities' Notice of Removal in its entirety. As set forth therein, both diversity jurisdiction and federal question jurisdiction provide grounds for removal. *See* Dkt. 1 at 5–15. In the interest of efficiency, those arguments are briefly summarized below.

9. The Polymarket Entities submit this Notice to raise a third, independent basis for removal: federal officer removal. This Court has original jurisdiction over this action under 28 U.S.C. § 1442(a)(1) because Plaintiff's suit directly targets Polymarket US's actions under the CFTC. In operating a DCM, Polymarket US serves as a "self-regulatory organization" and exercises delegated authority from the CFTC. Polymarket US does not merely comply with the federal regulatory regime as a self-regulatory organization; it serves as a frontline regulator that assists the CFTC by performing regulatory functions that—if not performed by Polymarket US—the CFTC itself would have to carry out. CFTC Staff Advisory at 1, CFTC Letter No. 26-08 (Mar. 12, 2026). Plaintiff's lawsuit challenges those regulatory functions, which include regulating market access, certifying event contracts for listing, and promulgating and enforcing rules to promote fair and equitable trading and to protect the market and market participants. Because Plaintiff's state-court lawsuit seeks to interfere with the system of self-regulation Congress created,

the CFTC implemented, and Polymarket US participates in, Polymarket US is entitled to remove this action to federal court.

**FIRST GROUND FOR REMOVAL: DIVERSITY JURISDICTION**

10. As set forth in the DraftKings Entities' Notice of Removal, this Court has original jurisdiction under 28 U.S.C. § 1332 because it is a civil action between "citizens of different States and in which citizens or subjects of a foreign state are additional parties," and the amount in controversy exceeds $75,000, exclusive of interest and costs. Dkt. 1 ¶¶ 10–33.

11. Complete diversity of citizenship exists when each plaintiff is a citizen of a different state from every defendant. A natural person is a citizen of the state in which the person is domiciled; a corporation is a citizen of its state of incorporation and principal place of business; and an LLC is a citizen of every state of which its members are citizens. *See* 28 U.S.C. § 1332(c)(1); *Cent. W. Va. Energy Co.* v. *Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011).

12. Complete diversity exists here because, as set forth in the summary table below listing each party's state(s) of citizenship, Plaintiff is a citizen of South Carolina but no Defendant is a citizen of South Carolina. *See* Dkt. 1 ¶¶ 11-28.

| Party | State(s) of Citizenship |
|---|---|
| Plaintiff James M. Hughes | South Carolina |
| DraftKings Inc. | Nevada, Massachusetts |
| GUS III LLC (d/b/a DraftKings Predictions) | Nevada, Massachusetts |
| Railbird Exchange, LLC (d/b/a DKeX) | Nevada, Massachusetts |
| Blockratize Inc. | Delaware, New York |
| QCL Quad Code USA Corp. | Delaware, New York |
| QCX LLC (d/b/a Polymarket US) | Delaware, New York |
| QC Clearing LLC (d/b/a Polymarket Clearing) | Delaware, New York |

| | |
|---|---|
| Chicago Mercantile Exchange Inc. | Delaware, Illinois |
| North American Derivatives Exchange, Inc. (d/b/a Crypto.com Derivatives North America) | Delaware, Illinois |
| Bitnomial Clearinghouse, LLC | Delaware, Wyoming |
| Wintermute Trading Ltd. | United Kingdom |
| Jump Trading LLC | Illinois, New Jersey, New York, Wisconsin, China, France, Russia, Singapore, United Kingdom |
| Galaxy Digital Trading, LLC | Delaware, New York |
| Virtu Financial Inc. | Delaware, New York |
| "John Doe" Defendants | n/a[1] |

13. Although the Polymarket Entities deny that Plaintiff is entitled to any relief, the relief demanded in the Complaint far exceeds $75,000, exclusive of interest and costs. Dkt. 1 ¶¶ 29-33. Plaintiff alleges that "thousands" of South Carolina residents have lost more than $50 at a time or sitting on Defendants' platforms and seeks four times the value of the alleged losses under § 32-1-20. Compl. ¶ 149. This amounts to well over $75,000 in controversy. Moreover, Plaintiff also seeks injunctive relief, the value of which exceeds $75,000 because the cost to Defendants of complying with the demanded injunction would far exceed $75,000. Dkt. 1 ¶ 32.

14. Accordingly, because there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs, this Court has original jurisdiction under 28 U.S.C. § 1332 and this action may be removed under 28 U.S.C. § 1441.

[1] Defendants John Does 1-10 are unnamed defendants sued under fictitious names. Their citizenship is irrelevant to the diversity analysis because, "[i]n determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b)(1).

**SECOND GROUND FOR REMOVAL: FEDERAL QUESTION JURISDICTION**

15. As set forth in the DraftKings Entities' Notice of Removal, this Court also has original jurisdiction under 28 U.S.C. § 1331 because the Complaint necessarily raises substantial, disputed questions of federal law. Dkt. 1 ¶¶ 34–46.

16. Federal question jurisdiction exists where a state-law claim necessarily raises a federal issue that is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn* v. *Minton*, 568 U.S. 251, 258 (2013); *Grable & Sons Metal Prods., Inc.* v. *Darue Eng'g & Mfg.*, 545 U.S. 308, 313–14 (2005).

17. Here, Plaintiff's claim cannot be adjudicated without deciding disputed and substantial questions of federal law. The sole statutory claim pled in Plaintiff's Complaint limits recovery to gambling activities "not authorized by law," such that Plaintiff must prove that the event contracts at issue—traded on Polymarket US's lawful, nationwide designated contract market subject to the exclusive jurisdiction of the CFTC—are unlawful rather than federally authorized swaps. *See* S.C. Code Ann. § 32-1-60; Dkt. 1 ¶¶ 41–44. This is a substantial question in the action, and Plaintiff expressly "disputes that Defendants' 'event contracts' are swaps" and "that they would be permissible under the Commodity Exchange Act even if they were swaps." Compl. ¶ 140 n.7; *accord* Dkt. 1 ¶ 45.

18. Furthermore, federal adjudication will not disrupt the federal-state balance. Whether the CEA's grant of exclusive jurisdiction covers the event contracts traded on the DCMs at issue in this case is a pure question of federal statutory interpretation with nationwide consequences. *See* Dkt. 1 ¶ 46. A ruling from this Court on that question will not disrupt the

federal-state balance because Congress centralized derivatives regulation in the CFTC precisely to prevent a fragmented patchwork of state requirements. *Id.*

19. Because Plaintiff's Complaint necessarily raises substantial, disputed federal questions, this Court has original jurisdiction under 28 U.S.C. § 1331. *See* Dkt. 1 ¶¶ 34–46.

**THIRD GROUND FOR REMOVAL: FEDERAL OFFICER REMOVAL**

20. The federal officer removal statute—28 U.S.C. § 1442(a)(1)—independently guarantees Polymarket US the right to remove Plaintiff's action to federal court because Polymarket US is a federally-licensed DCM, exercising delegated regulatory authority from the CFTC, and Plaintiff's claim targets that federally-supervised operation.

21. The federal officer removal statute authorizes removal of an action against "any officer (or any person acting under that officer) of the United States or of any agency thereof . . . for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). The statute provides a federal forum for federal defenses, protects federal operations from interference, and must be "liberally construed." *Sawyer* v. *Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017) (internal citations omitted); *Watson* v. *Philip Morris Cos.*, 551 U.S. 142, 147 (2007).

22. Moreover, federal officer removal "is an exception to the 'well-pleaded complaint rule,'" allowing "suits against federal officers [to] be removed despite the nonfederal cast of the complaint." *Kircher* v. *Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (2006). In assessing federal officer removal, courts credit the defendant's "theory of the case" for jurisdictional purposes. *Jefferson Cnty.* v. *Acker*, 527 U.S. 423, 432 (1999). Where the §1442 requirements are met, the entire case is removable to the federal court. *Sawyer*, 860 F.3d at 257.

23. A private defendant may remove under § 1442(a)(1) by demonstrating that (a) it acted under a federal officer; (b) the charged conduct was "for or relating to" the asserted official

authority; and (c) it has a "colorable federal defense." *Sawyer*, 860 F.3d at 254. Here, Polymarket US satisfies all three requirements.

24. ***First***, Polymarket US is a person "acting under" the CFTC because it "assist[s]" and "help[s] carry out" the CFTC's duties. *Watson*, 551 U.S. at 142 (internal citations omitted).

25. Polymarket US is a "person" for purposes of the federal officer removal statute. *See Hurley* v. *CBS Corp.*, 648 F. App'x 299, 303 (4th Cir. 2016) (holding that General Electric Corporation is a "person" under Section 1442(a)); *see also* 1 U.S.C. § 1 (defining "person" to include "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals").

26. Polymarket US "act[s] under" the CFTC because it operates its designated contract market subject to the CFTC's direction and "an unusually close [relationship] involving detailed regulation, monitoring, [and] supervision." *Watson,* 551 U.S. at 153. Indeed, the CFTC formally designated Polymarket US as a DCM in July 2025, reflecting a federal finding that Polymarket US satisfies the stringent requirements governing derivatives trading on federal exchanges. *See* 7 U.S.C. §§ 7(a), 7(d), 8(a); 17 C.F.R. §§ 38.3(a), 38.151. And to operate as a DCM, Polymarket US must comply with the CEA's 23 core principles and all CFTC rules governing access, contract design, surveillance, enforcement, dispute resolution, and customer protection. *See id.* The CFTC monitors compliance with these requirements and has extensive supervisory authority over Polymarket US; the CFTC may invoke its sweeping enforcement authority to suspend or revoke a DCM's designation, bring administrative enforcement actions, or sue in federal court. *CFTC* v. *Schor*, 478 U.S. 833, 842 (1986); 7 U.S.C. §§ 7b, 8(b), 9, 13a-1, 13b.

27. Polymarket US is not, however, merely a highly regulated entity subject to extensive supervision by the CFTC. As a DCM, Polymarket US is a "self-regulatory organization"

(SRO) under 17 C.F.R. § 1.3 that exercises delegated government discretion. CFTC Staff Advisory, CFTC Letter No. 26-08 (Mar. 12, 2026) (finding that contract markets have "self-regulatory obligations for the contract markets they operate"). Congress established "a system of effective self-regulation of trading facilities . . . under the oversight of the Commission," 7 U.S.C. § 5(b), and granted contract markets a form of delegated governmental discretion to adopt and enforce market protections. *Barry* v. *Cboe Glob. Mkts., Inc.*, 42 F.4th 619, 625 (7th Cir. 2022). Accordingly, Polymarket US does more than comply with federal rules—as an SRO, it "assist[s]" and "help[s] carry out" the CFTC's duties. *Watson*, 551 U.S. at 152.

28. As a self-regulatory organization, Polymarket US performs several core regulatory functions that "the Government itself would have had to perform" absent the self-regulatory system. *Watson*, 551 U.S. at 154; *see In re Chi. Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*, 390 F. Supp. 3d 916, 929 (N.D. Ill. 2019) (discussing that DCMs perform regulatory functions that otherwise would be performed by a government agency).

29. For example, Polymarket US:

a. establishes, monitors, and enforces compliance with the rules of the contract market, including access requirements, the terms and conditions of contracts traded on the contract market, and rules prohibiting abusive trading practices, 7 U.S.C. § 7(d)(2)(A);

b. prevents manipulation, price distortion, and market disruptions through surveillance and enforcement, *id.* § 7(d)(4);

c. establishes and enforces rules to protect markets and participants from abusive practices and "to promote fair and equitable trading," *id.* § 7(d)(12); and

d. "maintain[s] rules and procedures to provide for the recording and safe storage of all identifying trade information" so that it can be used "to assist in the prevention of customer and market abuses," *id.* § 7(d)(10).

30. To list new event contracts, DCMs such as Polymarket US must either submit the event contract for CFTC approval or certify that the contract complies with federal law and the CFTC's requirements. 7 U.S.C. §§ 7a-2(c)(1), (4)(A), (5)(C); 17 C.F.R. §§ 40.2(a), 40.3(a), 40.11(c). After a contract is listed, the CFTC retains authority to investigate, stay, or amend the contract, 17 C.F.R. § 40.2(c), and has discretion to prohibit contracts contrary to the public interest, 7 U.S.C. § 7a-2(c)(5)(C)(i).

31. Once a contract is listed, DCMs such as Polymarket US must "provide a competitive, open, and efficient market and mechanism for executing transactions that protects the price discovery process," 7 U.S.C. § 7(d)(9)(A), and must provide "impartial access" to market participants, 17 C.F.R. § 38.151(a)–(c).

32. Ultimately, because Polymarket US's actions involve "an effort to assist, or to help carry out, the duties or tasks of" the CFTC—its "federal superior"—Polymarket US "act[s] under" the CFTC for purposes of Section 1442(a). *Watson*, 551 U.S. at 154.

33. As the Supreme Court explained in *Watson*, "the words 'acting under' are broad[.]" 551 U.S. at 147. Accordingly, the Fourth Circuit has extended "acting under" beyond government contractors to private entities exercising delegated federal functions. *See Cnty. Bd. of Arlington Cnty.* v. *Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 251–54 (4th Cir. 2021) (reversing remand where subcontractors administered a Department of Defense health plan under detailed federal oversight); *West Virginia ex rel. Hunt* v. *CaremarkPCS Health, L.L.C.*, 140 F.4th 188, 197–98 (4th Cir. 2025) (reversing remand where pharmacy benefit manager acted under OPM despite no direct

federal contract). Here, the numerous delegated federal functions that Polymarket US performs as a self-regulatory organization leave no doubt that it is "acting under" the CFTC.

34. ***Second***, Plaintiff's claim directly challenges actions that Polymarket US undertakes under the CFTC's authority, supervision, and jurisdiction. Specifically:

a. Plaintiff alleges that Polymarket US operates an exchange through which South Carolina residents can place "illegal sports wagers" (Compl. ¶ 6) and seeks "injunctive relief enjoining Defendants [including Polymarket US] from continuing their illegal operations in the state." Compl. Prayer for Relief. Yet federal law directs Polymarket US to "establish, monitor, and enforce compliance" with "access requirements," 7 U.S.C. § 7(d)(2)(A), and provide "impartial access to its markets and services," 17 C.F.R. § 38.151(b).

b. Plaintiff characterizes the event contracts Polymarket US offers as illegal sports bets and gambling. Compl. ¶¶ 9–10, 16, 83, 140–41. But Polymarket US offers those contracts pursuant to its designation as a CFTC-registered DCM subject to comprehensive CFTC supervision, and the CFTC has exclusive authority to determine whether event contracts involve "gaming" and whether to prohibit their listing. 7 U.S.C. § 7a-2(c)(5)(C).

c. Plaintiff alleges that Polymarket US's exchange specifies the terms of bets, establishes how the winner will be determined, codifies how disputes will be resolved, and enforces rules regarding who can participate (Compl. ¶ 88) and characterizes this activity as an "illegal" sports betting operation. Compl. ¶ 6. Yet federal law requires Polymarket US to perform precisely these functions: setting "the terms and conditions of any contracts to be traded on the contract market,"

"detect[ing], investigat[ing], and apply[ing] appropriate sanctions" to violators, 7 U.S.C. § 7(d)(2)(A)-(B), and providing "a competitive, open, and efficient market and mechanism for executing transactions," *id.* § 7(d)(9)(A).

35. Plainly, the challenged conduct "relates to" Polymarket US's federal duties. As the Supreme Court explained in *Chevron USA Inc.* v. *Plaquemines Parish*, "[t]he phrase 'relating to' sweeps broadly" and "a removing defendant need not show that [its] federal duties specifically required or strictly caused the challenged conduct." 146 S. Ct. 1052, 1060-61 (2026). Plaintiff targets the event contracts Polymarket US offers pursuant to its designation as a DCM, and the connection between the challenged conduct and Polymarket US's federal duties is close and direct—not "tenuous, remote, or peripheral." *Id.* (internal quotations omitted). Polymarket US's federal designation and CFTC oversight are at the core of Plaintiff's complaint.

36. ***Third***, Polymarket US has a colorable federal defense: Plaintiff's state-law claim is preempted.

37. The CEA, which classifies event contracts as "swaps" (*see* 7 U.S.C. § 1a(47)(A)(ii)), expressly preempts Plaintiff's claim because it grants the CFTC "exclusive jurisdiction" over "swaps" "traded or executed on a contract market designated" under the Act. *Id.* § 2(a)(1)(A). Under federal law, the CFTC, not state lawmakers, determines whether event contracts may be listed on federally regulated exchanges. 7 U.S.C. § 7a-2(c)(5)(C). Indeed, Congress made the CFTC's authority exclusive because it recognized that regulation of nationwide exchanges under "different State laws" would lead to "total chaos." *Hr'gs Before the S. Comm. on Agric. & Forestry*, 93d Cong. 685 (1974) (statement of Sen. Clark).

38. As the Third Circuit recently explained in *KalshiEX, LLC* v. *Flaherty*, the CEA "preempts state laws that directly interfere with swaps traded on DCMs" and "sports-related event contracts are swaps traded on a CFTC-licensed DCM." 172 F.4th 220, 226 (3d Cir. 2026).[2]

39. Furthermore, the CFTC has affirmatively defended its exclusive jurisdiction over designated contract markets in numerous lawsuits against States that have sought to outlaw, regulate, or otherwise restrain federally regulated prediction markets, warning that such state efforts intrude on "the CFTC's clear and longstanding exclusive jurisdiction to regulate event contracts under the Commodity Exchange Act" and would subject CFTC-regulated exchanges to "a fragmented patchwork of state regulations." CFTC Press Release No. 9206-26 (Apr. 2, 2026). The CFTC has further confirmed that the federally regulated contract markets subject to its exclusive jurisdiction include Polymarket US. *See, e.g.*, Compl. ¶ 37, *United States* v. *Illinois*, No. 1:26-cv-03659 (N.D. Ill. Apr. 2, 2026).

40. "One of the primary purposes of the removal statute . . . was to have [federal officers'] defenses litigated in the federal courts." *Willingham* v. *Morgan*, 395 U.S. 402, 407 (1969). "State-court proceedings may reflect 'local prejudice' against unpopular federal laws or federal officials," *Watson*, 551 U.S. at 150, and private parties like Polymarket US may likewise face "a significant risk of state-court 'prejudice,'" *id.* at 152. This Court should recognize its jurisdiction under § 1442(a)(1) to ensure Polymarket US's preemption defense is fairly litigated.

[2] Although the Fourth Circuit has not yet addressed this issue, the pending appeal in *KalshiEX, LLC* v. *Martin*, No. 25-1892, which will address whether the CEA preempts materially identical state-law gambling claims, confirms Polymarket US's defense is substantial and colorable. *See West Virginia ex rel. Hunt* v. *CaremarkPCS Health*, 140 F.4th at 198–99 (a preemption defense need only be plausible—not clearly sustainable—to be colorable).

## ALL REMOVAL REQUIREMENTS ARE MET

41. Based on the foregoing, this Court has jurisdiction over this action for three independent reasons: (1) the amount in controversy exceeds $75,000 and complete diversity exists between Plaintiff and all Defendants; (2) the Complaint necessarily raises substantial, disputed federal questions; and (3) Polymarket US is acting under a federal officer within the meaning of 28 U.S.C. § 1442(a)(1), exercising delegated regulatory authority from the CFTC, Plaintiff's claims relate to acts taken under that authority, and Polymarket US has a colorable federal-law defense to Plaintiff's claim.

42. Removal is timely. Per Plaintiff's affidavits of service, QCX LLC was served on August 7, 2026, and the remaining Polymarket Entities were served on August 10, 2026. *See* Dkt. 1-4. QCX LLC's 30-day removal period under 28 U.S.C. § 1446(b)(1) expires on September 6, 2026, a Sunday, and September 7, 2026 is a legal holiday; accordingly, QCX LLC's removal deadline is September 8, 2026. *See* Fed. R. Civ. P. 6(a)(1)(C). The Polymarket Entities make this filing within that period.

43. Venue is proper in this Court because it is the federal district embracing the Charleston County Court of Common Pleas, Ninth Judicial Circuit, where Plaintiff commenced this action. 28 U.S.C. §§ 1391, 1441(a), 1446(a).

44. For removal under §§ 1331 and 1332, all named and properly served Defendants still party to this lawsuit have consented to removal. Dkt. 1 ¶ 52. For removal under § 1442(a), co-defendant consent is not required. *See Akin* v. *Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998).

45. The Polymarket Entities incorporate by reference all process, pleadings, and orders served on defendants, which were submitted in connection with the DraftKings Entities Notice of Removal. *See* Ex. 4 to Notice of Removal, Dkt. 1; 28 U.S.C. § 1446(a).

46. The Polymarket Entities will provide Plaintiff with written notice of this filing and promptly file a copy of this Notice with the Clerk of the Court of Common Pleas, Ninth Judicial Circuit, Charleston County, South Carolina. 28 U.S.C. § 1446(d).

47. All statutory and procedural requirements for removal are satisfied.

**RESERVATION**

48. The Polymarket Entities do not waive any objection to notice, service, personal jurisdiction, venue, or any other defense. They reserve—and expressly do not waive—all rights, arguments, and defenses they have to this action, whether in state or federal court, including, but not limited to, improper service of process, lack of personal jurisdiction, and any right to compel arbitration. The Polymarket Entities reserve the right to amend or supplement this Notice.

**CONCLUSION**

The Polymarket Entities respectfully request that this Court accept and retain removal of this action and retain jurisdiction for all further proceedings in this matter.

Dated: September 8, 2026

Respectfully submitted,

*/s/ Lindsey W. Cooper Jr.*

Lindsey W. Cooper Jr. (Fed. Bar ID 9909)
Charlie Patrick (Fed. Bar ID 13029)
Linsay Boyce (Fed. Bar ID 11952)
COOPER | TIERNEY
36 Broad Street Charleston, SC 29401
Telephone: (843) 375-6614
lwc@coopertierney.com

cwp@coopertierney.com
linsay@coopertierney.com

Samson A. Enzer*
Edward N. Moss*
Miles C. Wiley*
Gregory Mortenson*
Lauren A. Riddell*
**CAHILL GORDON & REINDEL LLP**
32 Old Slip
New York, NY 10005
Telephone: (212) 701-3000
senzer@cahill.com
emoss@cahill.com
mwiley@cahill.com
gmortenson@cahill.com
lriddell@cahill.com

**Applications for pro hac vice admission forthcoming*

*Attorneys for Defendants Blockratize Inc.; QCL Quad Code USA Corp.; QCX LLC (d/b/a Polymarket US); and QC Clearing LLC (d/b/a Polymarket Clearing)*

**CERTIFICATE OF SERVICE**

I hereby certify that the within document has been electronically filed and served with the Court on September 8, 2026, and that I sent a copy of the foregoing document via email and first-class mail to the following:

T. David Hoyle
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, S.C. 29464
dhoyle@motleyrice.com

William H. Narwold
MOTLEY RICE LLC
20 Church St., 17th Floor
Hartford, CT 06103
bnarwold@motleyrice.com

Previn Warren
Abigail Burman
Nelson Drake
MOTLEY RICE LLC
401 9th Street NW Suite 630
Washington, DC 20004
pwarren@motleyrice.com
aburman@motleyrice.com
ndrake@motleyrice.com

*Attorneys for Plaintiff*