**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

**JAMES M. HUGHES,**

*Plaintiff,*

*v.*

**DRAFTKINGS INC.;**
**GUS III LLC (D/B/A DRAFTKINGS PREDICTIONS, F/K/A GUS III INC.);**
**RAILBIRD EXCHANGE, LLC (D/B/A DKEX);**
**BLOCKRATIZE, INC.;**
**QCL QUAD CODE USA CORP.;**
**QCX LLC (D/B/A POLYMARKET US);**
**QC CLEARING LLC (D/B/A/ POLYMARKET CLEARING);**
**CHICAGO MERCANTILE EXCHANGE INC.;**
**NORTH AMERICAN DERIVATIVES EXCHANGE, INC. (D/B/A CRYPTO.COM DERIVATIVES NORTH AMERICA);**
**BITNOMIAL CLEARINGHOUSE, LLC;**
**WINTERMUTE TRADING LTD.;**
**JUMP TRADING LLC;**
**DRW HOLDINGS LLC;**
**IMC-CHICAGO, LLC;**
**GALAXY DIGITAL TRADING, LLC;**
**VIRTU FINANCIAL INC.; and**
**JOHN DOES 1-10,**

*Defendants*.

Case No. 26 Civ. 2:26-cv-03838-RMG

(Removed from the Court of Common Pleas, Ninth Judicial Circuit, Charleston County, South Carolina, Case No. 2026-CP-10-04063)

**PLAINTIFF JAMES M. HUGHES' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND**

## TABLE OF CONTENTS

Introduction .......... 1

Argument .......... 2

I. Plaintiff does not have Article III standing. .......... 2

A. Plaintiff has not suffered a direct injury in fact. .......... 6

B. Plaintiff has not been assigned gamblers' injuries in fact. .......... 7

C. Plaintiff has not been assigned the State's sovereign injury. .......... 9

II. Even if Article III is satisfied, the Court lacks original jurisdiction over this case. .......... 11

A. Plaintiff's claims do not "necessarily raise" a federal question. .......... 12

B. If the Statute of Anne is a *qui tam* statute, the real parties in interest are not completely diverse. .......... 19

III. This Court does not have jurisdiction under the federal officer removal statute. .......... 20

Conclusion .......... 22

## TABLE OF AUTHORITIES

**Cases**


*Berkebile v. Outen*, 426 S.E.2d 760 (S.C. 1993)....................11, 17

*Bevivino v. Town of Mount Pleasant Bd. of Zoning Appeals*, 737 S.E.2d 863 (S.C. Ct. App. 2013) .................... 7

*Braden v. ARB Gaming LLC*, 2024 WL 4648002 (M.D. Tenn. Oct. 31, 2024) .................... 9

*Burrell v. Bayer Corp.*, 918 F.3d 372 (4th Cir. 2019) .................... 16

*Burt v. Playtika*, 132 F.4th 398 (6th Cir. 2025).................... 4, 8, 10

*Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987) .................... 16

*Cayce v. VGW, Ltd.*, 832 F. Supp. 3d 744 (W.D. Ky. 2026).................... 4

*City of Charleston v. Brabham Oil Co., Inc.*, No. 2:20-CV-03579-RMG, 2023 WL 11867279 (D.S.C. July 5, 2023) .................... 17

*City of Indianapolis v. Chase Nat. Bank*, 314 U.S. 63 (1941) .................... 28

*Cook v. Georgetown Steel Corp.*, 770 F.2d 1272 (4th Cir. 1985) .................... 15

*County. Bd. of Arlington County, Virginia v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243 (4th Cir. 2021) .................... 29

*Cunningham v. Cornell Univ.*, 604 U.S. 693 (2025).................... 17

*DC Gambling Recovery LLC v. American Wagering, Inc.*, 2026 WL 850330 (D.D.C. Mar. 26, 2026) .................... passim

*Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677 (2006).................... 21, 23

*Env't Rsch. Ctr., Inc. v. Hotze Health Wellness Ctr. Int'l One, L.L.C.*, 2018 WL 11277666 (N.D. Cal. Dec. 21, 2018) .................... 15, 27

*Episcopal Church in S.C. v. Church Ins. Co. of Vt.*, 2020, WL 109816 (D.S.C. Jan. 9, 2020)....... 2

*Fowler v. Beasley*, 472 S.E.2d 630 (S.C. 1996).................... 7

*Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1 (1983) ..... 17

*Francis v. Mauldin*, 55 S.E.2d 337, 340 (S.C. 1949)....................11, 19

*GenBioPro, Inc. v. Raynes*, 144 F.4th 258 (4th Cir. 2025).................... 7

*Georgia Gambling Recovery LLC v. Kalshi Inc.*, 2026 WL 279375 (M.D. Ga. Feb. 3, 2026)..... 19

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308 (2005).......... 16

*Gunn v. Minton*, 568 U.S. 251 (2013).................... 16, 20, 22

*Hayden v. Magnolia Plantation Corp.*, No. 2:20-CV-00731-RMG, 2020 WL 996801 (D.S.C. Mar. 2, 2020).................... 23, 25

*In re Bulldog Trucking, Inc.*, 147 F.3d 347 (4th Cir. 1998) .......... 2

*In re Fresenius Granuflo/NaturaLyte Dialysate Prods. Liab. Litig.*, 76 F. Supp. 3d 268 (D. Mass. 2015) .......... 27

*Indiana ex rel. Harmeyer v. Kroger Co.*, 2017 WL 2544111 (S.D. Ind. June 13, 2017) .......... 26

*Johnson v. Collins Ent. Co.*, 199 F.3d 710 (4th Cir. 1999) .......... 24

*Joytime Distributors & Amusement Co. v. State*, 528 S.E.2d 647 (S.C. 1999).......... 18

*KalshiEX LLC v. Schuler*, 2026 WL 2884087 (6th Cir. Sept. 25, 2026).......... 22

*Keep Am. Safe & Beautiful v. Taylor Made Grp., LLC*, 2024 WL 2853973 (N.D. Cal. May 7, 2024.......... 16

*Kentucky Gambling Recovery LLC v. Kalshi Inc.*, 2026 WL 596107 (E.D. Ky. Mar. 4, 2026) .......... passim

*Kentucky Gambling Recovery LLC v. Underdog Sports Holdings, Inc., et al.*, 2026 WL 2406103 (E.D. Ky. Aug. 18, 2026) .......... 4

*Long v. D.C.*, 820 F.2d 409 (D.C. Cir. 1987) .......... 27

*Lontz v. Tharp*, 413 F.3d 435 (4th Cir. 2005).......... 2

*Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178 (4th Cir. 2022).......... 28, 29

*Mikulski v. Centerior Energy Corp.*, 501 F.3d 555 (6th Cir. 2007).......... 21, 22, 23

*Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161 (2014) .......... 26

*Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148 (4th Cir. 1994) .......... 2

*Navarro Sav. Ass'n v. Lee*, 446 U.S. 458 (1980).......... 25

*Netro v. Greater Baltimore Med. Ctr., Inc.*, 891 F.3d 522 (4th Cir. 2018) .......... 13

*Nevada ex rel. Nevada Gaming Control Bd. v. Blockratize Inc.*, 2026 WL 579376 (D. Nev. Mar. 2, 2026) .......... 28

*New Mexico ex rel. Nat'l Educ. Ass'n of New Mexico, Inc. v. Austin Cap. Mgmt. Ltd.*, 671 F. Supp. 2d 1248 (D.N.M. 2009) .......... 26

*O'Leary v. TrustedID, Inc.*, 60 F.4th 240 (4th Cir. 2023) .......... 6

*Ohio Gambling Recovery, LLC v. Kalshi Inc.*, 2026 WL 865788 (N.D. Ohio Mar. 30, 2026) .......... passim

*O'Leary v. TrustedID, Inc.*, 60 F.4th 240 (4th Cir. 2023).......... 1

*Proctor v. Whitlark & Whitlark, Inc.*, 778 S.E.2d 888 (S.C. 2015) .......... 19

*Rorrer v. P.J. Club, Inc.*, 556 S.E.2d 726 (S.C. Ct. App. 2001) ..........11, 18

*S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175 (4th Cir. 2013).......... 13

*S.C. by & through Ariail v. LendingTree, LLC*, 2009 WL 10678642 (D.S.C. May 19, 2009)........ 9

*S.C. Dep't of Disabilities & Special Needs v. Hoover Universal, Inc.*, 535 F.3d 300 (4th Cir. 2008). ........ 26

*See Moore v. Weinberg*, 644 S.E.2d 740 (S.C. Ct. App. 2007) ........ 10

*Sloan v. Friends of Hunley, Inc.*, 630 S.E.2d 474 (S.C. 2006)........ 7

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)........ 3, 8, 12, 13

*Sprint Communications Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269 (2008)........ 3

*State of California, ex rel. Servs. Disabled Veterans Telecommunications v. MCI Telecommunications Corp.*, 185 F.3d 868 (9th Cir. 1999) ........ 27

*State v. Attardo*, 211 S.E.2d 868 (S.C. 1975) ........ 18

*State v. Biden*, 52 F.4th 362 (8th Cir. 2022). ........ 14

*Strawn v. AT&T Mobility LLC*, 530 F.3d 293 (4th Cir. 2008)........ 2

*Town of Mount Pleasant v. Chimento*, 737 S.E.2d 830 (S.C. 2012) ........ 18

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)........ passim

*Trumbo v. Finley*, 18 S.C. 305 (1882)........11

*U.S. ex rel. Bunk v. Gosselin World Wide Moving, N.V.*, 741 F.3d 390 (4th Cir. 2013)........ 14

*U.S. ex rel. Eisenstein v. City of New York, New York*, 556 U.S. 928 (2009)........ 25

*United States ex rel. Mohajer v. Omnicare, Inc.*, 525 F. Supp. 3d 447 (S.D.N.Y. 2021)........ 26

*Vermont Agency of Nat. Resources v. U.S. ex rel. Stevens*, 529 U.S. 765 (2000) ........ passim

*Virginia ex rel. Hunt* v. *CaremarkPCS Health, L.L.C.*, 140 F.4th 188 (4th Cir. 2025) ........ 30

*West Virginia State University Board of Governors v. Dow Chemical Co.*, 23 F.4th 288 (4th Cir. 2022) ........ 29

*Wood v. Crane Co.*, 764 F.3d 316, (4th Cir. 2014)........ 15

**Statutes**

1999 South Carolina Laws Act 125 (H.B. 3834) ........ 17

28 U.S.C. § 1331........ 15

28 U.S.C. § 1332........ 15

28 U.S.C. § 1441........ 15

28 U.S.C. § 1442........ 24

S.C. Code § 32-1-10........ 9, 10, 16, 17

S.C. Code § 32-1-20........ 1, 9, 10

S.C. Code § 32-1-60 ........................................................................................................ 16, 17

**Other Authorities**

Myriam E. Gilles, *Representational* Standing*:* U.S. ex rel. Stevens *and the Future of Public Law Litigation*, 89 Cal. L. Rev. 315 (2001) ........................................................................ 14

## INTRODUCTION

On July 29, 2026, Plaintiff filed a state law claim against Defendants in the Charleston County Court of Common Pleas, seeking to recover money Defendants have won from South Carolinians through their illegal gambling enterprises. Dkt. 1 ("Compl."). Plaintiff has never placed a sports bet, nor does he represent any of the thousands of South Carolinians who have lost money to Defendants. *Id.* ¶¶ 26-27. He is exercising his right of action under South Carolina's loss recovery statute, the Statute of Anne, which empowers "any other person" to sue for such losses, plus "treble the value thereof," and thereby penalize Defendants for their violations of South Carolina law. S.C. Code § 32-1-20. Although the Statute of Anne gives Plaintiff a cause of action, that is not enough to confer this Court with subject matter jurisdiction. Defendants' notices of removal sidestep the fact that Plaintiff lacks Article III standing, the most fundamental requirement of federal jurisdiction. Plaintiff has not been injured and does not represent anyone who has.

Defendants may argue that the Statute of Anne is a *qui tam* statute, under which private litigants may sue on behalf of the State. But even if that were true, Plaintiff still would not have standing. Although the State suffers a sovereign injury when its laws are violated, a purely sovereign injury cannot be the basis of representational standing. Further, the Court would lack statutory jurisdiction. The allegations in Plaintiff's complaint do not raise a federal question, and there is no diversity jurisdiction over state *qui tam* claims. And while the Polymarket Defendants' removal papers assert jurisdiction under the federal officer statute, that too is incorrect. Federal officer removal is not justified simply because Defendants must comply with federal law.

For these reasons, Plaintiff's claims should be remanded to South Carolina state court, where third-party Statute of Anne claims have been resolved for more than a century. *See O'Leary v. TrustedID, Inc.*, 60 F.4th 240, 246 (4th Cir. 2023) (remanding state law claim to state court due to lack of subject matter jurisdiction).

**ARGUMENT**

"It is a fundamental precept that federal courts are courts of limited jurisdiction, constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." *In re Bulldog Trucking, Inc*., 147 F.3d 347, 352 (4th Cir. 1998) (cleaned up). Because Defendants are seeking removal, they bear the burden of demonstrating this Court has jurisdiction, which includes demonstrating that the requirements of Article III standing are satisfied. *Episcopal Church in S.C. v. Church Ins. Co. of Vt*., 2020 WL 109816, at *2 (D.S.C. Jan. 9, 2020), *aff'd*, 997 F.3d 149 (4th Cir. 2021); *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008). This burden is particularly heavy because courts must "strictly construe removal jurisdiction," and if there is any doubt that federal jurisdiction exists, "a remand is necessary." *Mulcahey v. Columbia Organic Chems. Co*., 29 F.3d 148, 151 (4th Cir. 1994). "[S]tate law complaints usually must stay in state court when they assert what appear to be state law claims." *Lontz v. Tharp*, 413 F.3d 435, 440 (4th Cir. 2005). Defendants cannot show this Court has Article III or statutory jurisdiction.

## I. Plaintiff does not have Article III standing.

The "irreducible constitutional minimum of standing" is (1) "an injury in fact, (2) "fairly traceable to the challenged conduct of the defendant," and (3) "likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016). Defendants fall at the first hurdle—they cannot show that Plaintiff has any injury in fact.

In general, an individual private plaintiff can show standing in one of three ways: an injury in fact suffered by the plaintiff, *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 432 (2021); an assignment of another party's injury in fact to the plaintiff, *see Sprint Communications Co., L.P. v. APCC Servs., Inc*., 554 U.S. 269, 286 (2008); or an assignment of the government's proprietary injury by statute, *see Vermont Agency of Natural Resources v. U.S. ex rel. Stevens*, 529 U.S. 765,

765–66 (2000) (hereinafter "*Stevens*"). None applies here. First, Plaintiff has never lost money to Defendants (indeed, he has never placed a sports bet, Compl. ¶ 26) and his statutory right of action does not constitute an injury in fact. Second, Plaintiff has not been assigned any gambler's injury in fact, as Plaintiff's cause of action under the Statute of Anne is separate from the cause of action for gamblers in both source and purpose. Third, even if the Statute of Anne empowers Plaintiff to sue on behalf of the State, Plaintiff still does not have standing because the state has suffered no proprietary injury, and statutory violations alone do not give standing to private plaintiffs.

Plaintiff addresses each of these points below. But first, it is worth observing that other federal courts have held that uninjured plaintiffs suing under state loss recovery acts lack Article III standing. Most notably, in *Burt v. Playtika, Ltd.*, the Sixth Circuit held that a non-injured plaintiff did not have standing to bring claims under Tennessee's loss recovery act. 132 F.4th 398, 401 (6th Cir. 2025). The court first observed that the statutory right of action created by the statute was not enough to confer standing. *Id.* at 403. It then found that the plaintiff had not been assigned the injuries of either gamblers (because the procedural requirements for an assignment were not met) or the state (because the statute was not a *qui tam* statute). *Id.* at 403-05. Two district courts have followed the Sixth Circuit's lead, finding in two different cases that the right of action created by the Kentucky loss recovery statute is insufficient to show Article III standing, since it does not assign the injuries of gamblers and is not *qui tam* statutes. *Cayce v. VGW, Ltd.*, 832 F. Supp. 3d 744, 746-52 (W.D. Ky. 2026); *Kentucky Gambling Recovery LLC v. Underdog Sports Holdings, Inc., et al.*, 2026 WL 2406103, at *38 (E.D. Ky. Aug. 18, 2026). There is admittedly enormous variation in state loss recovery statutes, which differ in structure, scope, causes of action, remedies, and judicial precedents. But this range only makes the consensus among these decisions more noteworthy.

Defendants are sure to point this Court to the one opinion finding that uninjured plaintiffs nonetheless have standing, *DC Gambling Recovery LLC v. American Wagering, Inc.*, 2026 WL 850330, (D.D.C. Mar. 26, 2026) ("*DC Gambling*"). That outlier opinion fundamentally misapprehended federal standing doctrine. While it is not binding on this court, understanding its shortcomings helps illustrate why the weight of federal court authority has come out the other way.

*DC Gambling* treated the Supreme Court's three-part standing analysis as just one method for ascertaining whether plaintiffs meet what is, in that court's eyes, the true baseline requirement of Article III standing: that plaintiffs bring the type of claims that have traditionally been resolved in British and American courts. *DC Gambling Recovery*, 2026 WL 850330, at *4. Proceeding on this basis, the court found the long history of loss recovery acts—and their similarity to other "common informer" laws allowing uninjured plaintiffs to exercise statutory rights of action—sufficient for the plaintiffs to show Article III standing, even absent an injury in fact. *Id.*

This approach fundamentally inverts the Supreme Court's standing analysis. History and tradition are relevant to determining whether an injury is the type of harm required for Article III standing. *See TransUnion*, 594 U.S. at 424 (to determine whether an injury is concrete, "courts should assess whether the alleged injury to the plaintiff has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts.") (cleaned up). But there must first be an injury. "If the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *Id.* at 423 (cleaned up).

The flawed logic of *D.C. Gambling* is well illustrated by its treatment of *Stevens*. *D.C. Gambling* relied on *Stevens* to assert that private plaintiffs have standing when they bring "cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." *DC*

*Gambling Recovery*, 2026 WL 850330, at *5 (cleaned up). Yet *Stevens* was clear that plaintiffs "must" demonstrate an injury in fact to establish Article III standing. 529 U.S. at 771. If history alone were enough to establish standing, then there would have been no need for the Supreme Court to ground the plaintiff's standing in the assignment of the government's proprietary injury in fact. *Id.* at 771-774; *see also infra* 9-11 (exploring qui tam standing in more detail). Instead, the Court turned to history only to confirm the sufficiency of such representational standing. *Stevens*, 529 U.S. at 774. Statutes of Anne may have a lengthy lineage, but that alone does not establish an injury in fact sufficient to satisfy Article III.

To be clear, Plaintiff's lack of Article III injury—either direct or assigned—does not pose any obstacle to him bringing his claim in South Carolina state court. *See O'Leary v. TrustedID, Inc.*, 60 F.4th 240, 246 (4th Cir. 2023) ("We offer no opinion about whether the alleged facts state a claim under the Act. Absent Article III jurisdiction, that's a question for [plaintiff] to take up in state court."). Under South Carolina law, the statutory right of action created by the Statute of Anne is enough to give him standing to sue in the Court of Common Pleas. The South Carolina Supreme Court has explicitly held that the General Assembly may confer standing even on plaintiffs who would otherwise have no legally protected interest in the outcome of the litigation. *See Sloan v. Friends of Hunley, Inc.*, 630 S.E.2d 474, 479 (S.C. 2006) (explaining that statutory standing requires no "personal stake in the outcome"). So long as the plaintiff has a statutory right of action, the plaintiff has standing. *See Fowler v. Beasley*, 472 S.E.2d 630, 632 (S.C. 1996) (because FOIA "permits any citizen to apply . . . for injunctive relief, . . . respondents have standing"); *Bevivino v. Town of Mount Pleasant Bd. of Zoning Appeals*, 737 S.E.2d 863, 867 (S.C. Ct. App. 2013) (because statute gives plaintiff a cause of action, existence of constitutional standing or "public

importance" standing is irrelevant). That is fundamentally different than the rule that applies in federal court: "No concrete harm, no standing." *TransUnion*, 594 U.S. at 442.

**A. Plaintiff has not suffered a direct injury in fact.**

When assessing standing at the pleading stage, plaintiffs' plausible allegations are taken as true. *GenBioPro, Inc. v. Raynes*, 144 F.4th 258, 269 (4th Cir. 2025). In this case, Plaintiff alleges no injury in fact. He "has suffered no direct or indirect injury traceable to the Defendants' conduct—he has personally experienced no gambling losses on account of the Defendants and, indeed, has never even bet on sports." Compl. ¶ 26. Plaintiff's "sole interest in this lawsuit is his desire to enforce that law and the public policies animating it." *Id.* ¶ 26.

Plaintiff does have a statutory right of action to seek a monetary recovery. But this is not enough. In *TransUnion*, the Court contemplated a hypothetical statute, very similar to the Statute of Anne, that gave anyone a right to sue polluters and recover statutory damages. The Court explained that a plaintiff whose property was polluted would have standing to bring a claim under the law, but one who had not been injured would not. *TransUnion*, 594 U.S. at 427–28. The same principle governs Plaintiff's claims here. Plaintiff "is, by definition, not seeking to remedy any harm to [himself] but instead is merely seeking to ensure [Defendants'] compliance with regulatory law (and, of course, to obtain some money via the statutory damages). Those are not grounds for Article III standing." *Id.* Related cases from the Supreme Court emphasize this same point. In *Spokeo*, the Court explained that a violation of a statute does not necessarily result in a concrete injury to the plaintiff. 578 U.S. at 342. And in *Stevens*, the Court explained that a bounty, alone, is "[a]n interest unrelated to injury in fact" and does not create Article III standing. 529 U.S. at 772.

In *Burt*, the Sixth Circuit correctly applied binding Supreme Court precedent when evaluating whether an uninjured third-party had standing under Tennessee's loss recovery act. The Sixth Circuit concluded there was no standing, holding that because the plaintiff "did not incur a

gambling loss herself, she did not suffer an injury in fact." *Burt*, 132 F.4th at 403. This Court is bound by the same precedent and should reach the same result.

**B. Plaintiff has not been assigned gamblers' injuries in fact.**

While individual gamblers in South Carolina likely have suffered injuries in fact on account of Defendants' conduct, those gamblers are not the plaintiffs in this case. Nor have they assigned to Plaintiff any right to pursue redress on their behalf (by contract or otherwise). Thus, Plaintiff does not and cannot purport to stand in their shoes. Plaintiff is transparent on this score; his complaint makes clear that he does not represent those gamblers or seek to recover on their behalf. Compl. ¶ 27; *Braden v. ARB Gaming LLC*, 2024 WL 4648002, at *3 (M.D. Tenn. Oct. 31, 2024) (lack of allegations that plaintiff was assigned third-party gambler's claims demonstrates lack of standing through assignment). Importantly, Plaintiff's claims under Section 32-1-20 are separate and distinct from any claims that gamblers might make under Section 32-1-10.

The distinction between the claims of gamblers and the claims of unrelated third parties is apparent from the plain text of the South Carolina Code. The most obvious difference is that the first- and third-party claims are codified in different sections. But the causes of actions created by the two sections are also distinct. Under Section 32-1-10, individual gamblers exclusively have three months to sue to recover their losses. After three months, the gambler's claim expires. Thereafter, Section 32-1-20 gives any other person the right to sue the winners. Because a third-party has the legal right to file suit only once a gambler has no remaining legal rights, the gambler "[has] no legal interest in the outcome of [the] litigation" and is not a real party in interest. *S.C. by & through Ariail v. LendingTree, LLC*, 2009 WL 10678642, at *6 (D.S.C. May 19, 2009). Further, even if the gambler did have any remaining legal interest, "a right of action does not create a forced assignment by others." *Braden*, 2024 WL 4648002, at *3.

Equally instructive is what the code does not say. There is no requirement that third parties suing under Section 32-1-20 share their recovery with the gamblers or their families, as would be expected in a representative suit. Nor is there any requirement that a third-party seek gamblers' consent, or even notify them, before filing suit. This fundamental lack of notice and consent runs contrary to first principles governing assignment, which require that an assignor actually intend a transfer. *See Moore v. Weinberg*, 644 S.E.2d 740, 745 (S.C. Ct. App. 2007), *aff'd,* 681 S.E.2d 875 (S.C. 2009) ("An assignment of a right is a manifestation of the assignor's intention to transfer it."); *Burt*, 132 F.4th at 404 (finding no assignment because plaintiff "does not allege that any of the family members agreed to such a transfer—or even know that Burt is suing on their behalf"). The one opinion positing that third parties could have standing to bring loss recovery claims through the statutory assignment of gamblers' claims, *DC Gambling Recovery*, based its conclusion solely on the parties' representations to that effect without any supporting legal authority. 2026 WL 850330, at *5. Even if such representations were sufficient (which they are not), they do not exist in this case.

The distinction between first- and third-party Statute of Anne claims has been recognized repeatedly by South Carolina courts. As the South Carolina Supreme Court explained in *Francis v. Mauldin*, Section 32-1-10 "is a remedial statute," whereas Section 32-1-20, "authorizing treble damages by a third person, is a penal statute." 55 S.E.2d 337, 340 (S.C. 1949); *accord Rorrer v. P.J. Club, Inc.*, 556 S.E.2d 726, 729 (S.C. Ct. App. 2001); *Trumbo v. Finley*, 18 S.C. 305, 311 (1882). Whereas first-party claims "protect a citizen and his family from the gambler's uncontrollable impulses," *Berkebile v. Outen*, 426 S.E.2d 760, 763 (S.C. 1993), third-party claims "punish excessive gaming," *Trumbo*, 18 S.C. at 310. Because third-party claims "impose[] a punishment which acts upon the offender alone, and not as a reparation to the party injured,"

*Rorrer*, 556 S.E. 2d at 567, they serve an entirely different purpose from first-party claims. As Plaintiff made clear in his complaint, he brings this case to punish Defendants' violations of South Carolina law, not to redress anyone's injuries. In short, Plaintiff's claim is not derivative of gamblers', their injuries have not been assigned to him, and Article III standing for Plaintiff's claim cannot be bootstrapped to whatever standing gamblers might have enjoyed had they timely commenced suit under the first-party statute.

**C. Plaintiff has not been assigned the State's sovereign injury.**

Defendants may argue that Plaintiff has Article III standing because the Statute of Anne assigns the state's injuries to Plaintiff. But this argument is no more viable than the previous two, since the state has not suffered any proprietary injuries to assign and sovereign injuries do not create standing for private plaintiffs.

To be afforded Article III standing, a plaintiff must have an injury in fact that is *separate* from any legislatively created interest in enforcing the law. *See Stevens*, 529 U.S. at 772; *Spokeo*, 578 U.S. at 339-41. "[T]he public interest that private entities comply with the law cannot be converted into an individual right by a statute that denominates it as such, and that permits all citizens (or, for that matter, a subclass of citizens who suffer no distinctive concrete harm) to sue." *TransUnion LLC*, 594 U.S. at 428-29 (cleaned up). A plaintiff does not "automatically satisfy[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 578 U.S. at 341.

In contrast, a statute that both creates a right of action and assigns an interest in the government's proprietary injuries can confer Article III standing on otherwise uninjured plaintiffs. This distinction is illustrated by comparing *TransUnion* and *Stevens*. In *TransUnion*, the Fair Credit Reporting Act required the defendants to provide consumers with their complete credit files and created a private right of action for all violations of the act. But a violation was not enough to

show that the plaintiffs had "suffered any harm *at all*," let alone an injury in fact conferring standing. 594 U.S. at 439-40 (emphasis original). In contrast, the relator plaintiff in *Stevens* sued under the False Claims Act (FCA), which both creates a private right of action and assigns part of the government's proprietary injuries to plaintiffs. 529 U.S. at 773-74. The plaintiff alleged that the government had been defrauded, and the Supreme Court held that the FCA's partial assignment of the government's proprietary injury afforded the plaintiff Article III standing. *Id.* at 770, 771, 773; *see also Netro v. Greater Baltimore Med. Ctr., Inc.*, 891 F.3d 522, 528 (4th Cir. 2018) (plaintiff had standing under non-*qui tam* statute because it assigned the government's recoupment interest, another form of proprietary injury).

In the present case, South Carolina has suffered no proprietary injury on which Plaintiff could rely to show standing. None has been pled; nor could one be inferred from the Complaint. *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 181–82 (4th Cir. 2013) ("When standing is challenged on the pleadings, we accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party."). An injury that does not "actually exist" cannot provide Article III standing. *Spokeo*, 578 U.S. at 340.

The analysis remains unchanged even if the Statute of Anne is considered a *qui tam* statute that assigns to Plaintiff, not only any proprietary injury (of which there is none), but also the government's separate sovereign injury arising from the violation of its laws.[1] *See Stevens*, 529 U.S. at 771 (noting that complaint asserted both proprietary injury resulting from alleged fraud and sovereign injury arising from violation of law). "Whether and when alleged sovereign injuries

[1] The Court need not take a position on whether or not the Statute of Anne is a *qui tam* statute. As set out *infra* 19-20, even if it is a *qui tam* statute, the Court still lacks jurisdiction.

can constitute the concrete and particularized injury in fact required for Article III standing is a controversial, unsettled question . . . ." *State v. Biden*, 52 F.4th 362, 369 (8th Cir. 2022). But for a private litigant, the answer is clear: "an injury in law is not an injury in fact." *TransUnion*, 594 U.S. at 427. Thus, even if the State may "assign" its sovereign injury to a private litigant,[2] that "assignment" could not confer standing on private plaintiffs[3] Because the only injury Plaintiff could assert on behalf of South Carolina is the bare violation of its laws, any such assignment does not confer Article III standing.

## II. Even if Article III is satisfied, the Court lacks original jurisdiction over this case.

The lack of a constitutionally viable injury in fact would not be the only problem with any *qui tam* standing theory proposed by Defendants. For a case to be removable under 28 U.S.C. § 1441, the district court must have original jurisdiction under the federal jurisdiction statutes. *Cook v. Georgetown Steel Corp.*, 770 F.2d 1272, 1274 (4th Cir. 1985). Defendants assert two bases for such jurisdiction: federal question jurisdiction, 28 U.S.C. § 1331, and diversity jurisdiction,

---

[2] "It seems safe to say that assignment may form the basis of representational standing only where the government's claim seeks to vindicate a proprietary injury." Myriam E. Gilles, *Representational* Standing*:* U.S. ex rel. Stevens *and the Future of Public Law Litigation*, 89 Cal. L. Rev. 315, 342 (2001). The Fourth Circuit's decision in *U.S. ex rel. Bunk v. Gosselin World Wide Moving, N.V.*, 741 F.3d 390 (4th Cir. 2013), is not to the contrary. The court rejected the defendant's argument that the relator's decision to pursue only civil penalties stripped the relator of standing on the theory that penalties, in contrast to damages, redress the government's (non-assignable) sovereign injury. *Id*. at 403. The court declined that "novel dissection," *id*. at 403, holding that the remedies "should not be evaluated in isolation for standing purposes," *id*. at 404. More to the point, damages and penalties are remedies, not injuries. A false claim inflicts always inflicts a proprietary injury, regardless of what remedies are pursued.

[3] For the standing inquiry, the assignor's injury becomes the assignees' own. *See Sprint*, 554 U.S. at 284, 287 (describing injuries aggregators have been assigned as "[t]he aggregators' injuries"). Thus, what matters is not whether a violation of South Carolina's laws affords the *state* Article III standing but rather whether the violation of South Carolina's laws gives a *private plaintiff* Article III standing. This is the analytical step missing from *DC Gambling Recovery*, 2026 WL 850330, *5, which simply assumed without citation that if a Statute of Anne assigns the state's sovereign injury to a private plaintiff, that assignment gives the private plaintiff Article III standing.

28 U.S.C. § 1332. Dkt. 5 (“PM NOR”) ¶ 8; Dkt. 1 (“DK NOR”) ¶ 7. They are limited to those asserted bases. *Wood v. Crane Co.*, 764 F.3d 316, 322 (4th Cir. 2014) (parties may not assert additional grounds for removal after petition is filed).

As discussed below, jurisdiction under 28 U.S.C. § 1331 is foreclosed because Plaintiff’s complaint does not “necessarily raise” a federal question. And if the Statute of Anne is a *qui tam* statute, then the State of South Carolina is a real party in interest, destroying complete diversity and barring jurisdiction under 28 U.S.C. § 1332. Even the possibility of such an inherent conflict between standing and statutory jurisdiction creates significant doubts about the Court’s jurisdiction that support remand. *See Env’t Rsch. Ctr., Inc. v. Hotze Health Wellness Ctr. Int'l One, L.L.C.*, 2018 WL 11277666, at *1 (N.D. Cal. Dec. 21, 2018) (remanding without determining whether statute was a *qui tam* statute or state would be the real party in interest, where plaintiff asserted standing through *qui tam* assignment); *Keep Am. Safe & Beautiful v. Taylor Made Grp., LLC*, 2024 WL 2853973, at *2 (N.D. Cal. May 7, 2024 (same).

**A. Plaintiff’s claims do not “necessarily raise” a federal question.**

Federal question jurisdiction generally requires that “a federal question [be] presented on the face of the plaintiff’s properly pleaded complaint.” *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). No such question is presented on the face of Plaintiff’s complaint, which pleads only state law claims. Lacking any plausible argument that a federal question appears in the pleadings, Defendants’ removal papers invoke the narrow and rarely applied exception to the well-pleaded complaint rule set out in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314 (2005), and *Gunn v. Minton*, 568 U.S. 251, 258 (2013). PM NOR ¶ 16; DK NOR ¶ 35. The *Grable-Gunn* exception permits federal-question jurisdiction when a state law claim includes federal law issues that are “(1) necessarily raised, (2) actually disputed, (3) substantial, ***and*** (4) capable of resolution in federal court without disrupting the federal-state balance approved

by Congress." *Gunn*, 568 U.S. at 258 (emphasis added); *see also Burrell v. Bayer Corp.*, 918 F.3d 372, 380 (4th Cir. 2019) (recognizing that this "exception" applies to a "slim category" of cases); *City of Charleston v. Brabham Oil Co., Inc.*, No. 2:20-CV-03579-RMG, 2023 WL 11867279, at *5 (D.S.C. July 5, 2023) (same).Defendants cannot clear this bar.

***First***, Plaintiff's cause of action does not *necessarily* raise any federal question. Defendants argue their activities are legal under the Commodity Exchange Act (CEA), so the Statute of Anne's recovery provision does not apply. DK NOR ¶ 43. Specifically, they cite S.C. Code § 32-1-60, which provides that "the provisions of Sections 32-1-10, 32-1-20, and 32-1-30 apply only to those gambling activities not authorized by law."). But that is an affirmative defense, not an element of Plaintiff's cause of action. And "a case may not be removed to federal court on the basis of a federal defense, . . . even if the defense is anticipated in the plaintiff's complaint." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 13-14 (1983).

S.C. Code § 32-1-60 is an "exemption[] set forth in a different part of the statute," not an "additional pleading requirement[]." *Cunningham v. Cornell Univ.*, 604 U.S. 693, 701 (2025). That is clear only from the structure of the statute, but from its history. Historically, the Statute of Anne has applied to excessive legal gambling, not just to illegal gambling. *See Berkebile*, 311 S.C. at 55 (S.C. 1993) ("no requirement for an illegal game [] as an element for recovery" under the Statute of Anne); S.C. Code § 32-1-10 (setting the relevant threshold for excessiveness as "the sum or value of fifty dollars"). Section 32-1-60 was added in 1999 by the General Assembly as a separate section of the code rather than an amendment to Section 32-1-10 or Section 32-1-20. 1999 South Carolina Laws Act 125 (H.B. 3834) (adding S.C. Code § 32-1-60). It thus created a safe harbor against claims under Section 32-1-10 and Section 32-1-20 rather than altering the requirements of the claims themselves. Where "a prima facie case [has been stated] under a statute and the

defendant claims to fall within an 'exception' or 'proviso' in the statute the burden is on the defendant to establish such a defense." *State v. Attardo*, 211 S.E.2d 868, 871 (S.C. 1975).

This construction is bolstered by dicta from the South Carolina Supreme Court, which likewise indicates that Section 32-1-60 creates an affirmative defense rather than a prima facie element of a plaintiff's claim under the Statute of Anne. That is the only way to understand *Rorrer v. P.J. Club, Inc.*, which observed that the "statutory scheme establishing a private right to recover excessive gambling losses is found in sections 32-1-10 and 32-1-20," with no reference to Section 32-1-60's exemption of legal gambling activity. 347 S.C. at 566. It also explains dictum in *Town of Mount Pleasant v. Chimento*, which observed that first-party Statute of Anne plaintiffs "are almost uniformly referred to as 'gamblers' regardless whether the enterprise was unlawful." 737 S.E.2d 830, 837 (S.C. 2012). The passing observation in *Joytime Distributors & Amusement Co. v. State*, 528 S.E.2d 647, 655 (S.C. 1999), that plaintiffs can recover gambling losses "only where the gambling activity which resulted in the loss is unlawful," is entirely consistent with factual disputes of illegality being an affirmative defense.

Defendants claim support from *Francis v. Mauldin*, but their arguments mischaracterize the case. In *Mauldin*, the court stated that the plaintiff bore the burden of proving that the "contract or transaction [at issue] *is a gambling transaction*." 55 S.E.2d 337, 378 (S.C. 1949) (emphasis added). True. But the case said nothing about the plaintiff's burden of proving *illegality*. The same is true of *Proctor v. Whitlark & Whitlark, Inc.* It held only that cases seeking to remedy losses from illegal gambling must be brought under the Statute of Anne rather than other state laws; it did not hold that illegality is a pleading requirement for a Statute of Anne claim. 778 S.E.2d 888, 890 (S.C. 2015).

Other courts analyzing loss recovery statutes with separate statutory exemptions for legal gambling have similarly concluded that this type of exemption is an affirmative defense, and thus does not necessarily raise a federal question. *See Kentucky Gambling Recovery LLC v. Kalshi Inc.*, 2026 WL 596107, at *5 (E.D. Ky. Mar. 4, 2026); *Ohio Gambling Recovery, LLC v. Kalshi Inc.*, 2026 WL 865788, at *4 (N.D. Ohio Mar. 30, 2026). Section 32-1-60's operation as an affirmative defense also distinguishes the present case from *Georgia Gambling Recovery LLC v. Kalshi Inc.*, 2026 WL 279375 (M.D. Ga. Feb. 3, 2026). In that case the court held there was a federal question because Georgia state court precedent *did* establish illegality as an essential element of a claim under the Georgia loss recovery act. *See id*. at *3.

In addition to being an affirmative defense, Defendants' theory of Section 32-1-60 is an affirmative defense based on preemption. Defendants go to great lengths to avoid the word "preemption," presumably because they know "a case may not be removed to federal court on the basis of… the defense of preemption." *Franchise Tax Bd.*, 463 U.S. 1, 14 (1983). But their word choices do not change the substance of their argument. Claiming that the CFTC has "exclusive jurisdiction" to "determine whether a listed contract involves gaming," DK NOR ¶ 43, is just another way of saying that the CEA preempts South Carolina's strict prohibition on sports betting.

***Second***, even if Defendants' affirmative defenses were capable of necessarily raising a federal question, the issues raised would not be "substantial" enough to sustain removal. "[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit . . . [t]he substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 261. When determining the substantiality of a federal issue, courts consider: (1) "whether the case includes a federal agency, and particularly, whether the agency's compliance with the federal statute is in dispute"; (2) "whether the federal question is

important"; (3) "whether a decision on the federal question will resolve the case (*i.e*. the federal question is not merely incidental to the outcome)"; and (4) "whether a decision on the federal question will control many other cases." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 570 (6th Cir. 2007) (citing *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700-01 (2006)). Here, each of those factors supports remand.

This Court is not the first to be confronted with an argument that preemption under the CEA presents a "substantial" question warranting removal of an action against a prediction market. In *Ohio Gambling Recovery*, Judge Pearson of the U.S. District Court for the Northern District of Ohio marched through each of those four factors and found that all of them favored remand. 2026 WL 865788. In *Kentucky Gambling Recovery*, Judge Van Tatenhove of the U.S. District Court for the Eastern District of Kentucky likewise analyzed these four factors and came to the same conclusion. 2026 WL 596107. The Court should follow the well-reasoned logic of these cases.

As to the first factor, "there is no federal agency in this dispute," nor does this case present a "question of whether a government agency has complied with a statute or regulation." *Mikulski*, 501 F.3d at 570. "The [CFTC] regulates the exchanges at issue, but the CFTC is not a party to the case and informs the analysis only by way of background into Defendants' offerings on their platforms." *Kentucky Gambling Recovery*, 2026 WL 596107, at *6.

As to the second factor, whether Defendants' activities constitute illegal gambling under South Carolina law or permissible "swaps" and "event contracts" under federal law is not of "importance [to] the federal system as a whole." *Gunn*, 568 U.S. at 260. "Any analysis regarding the legality of the event contracts under the CEA relates to the applicability of an exemption under [South Carolina] law, not federal law." *Ohio Gambling Recovery*, 2026 WL 865788, at *7; *see also Kentucky Gambling Recovery*, 2026 WL 596107, at *6 (same). Defendants argue that even a South

Carolina state court ruling about South Carolina law could "fracture national derivatives markets and undermine the uniformity Congress deemed essential." DK NOR ¶ 46. But even assuming that Defendants' so-called "sports event contracts" are covered by the CEA, nothing in the CEA or its regulations mandates that Defendants offer these contracts—or operate at all—in South Carolina. *KalshiEX LLC v. Schuler*, 2026 WL 2884087, at *26 (6th Cir. Sept. 25, 2026). Indeed, Defendant DraftKings already offers sports "event contracts" only in select states. Compl. ¶ 101.

As to the third factor, the centrality of state law to this case means that a resolution of the federal question raised by Defendants would not be "dispositive of this case." *Mikulski*, 501 F.3d at 571. *Kentucky Gambling Recovery LLC* is instructive:

> The Court again considers this case to more aptly focus on the interpretation of Kentucky's own statutes, rather than on the interpretation of the Commodities Exchange Act. Kentucky's courts could very well rule that Defendants' activities fall within the safe harbor provision of their gambling statutes. Kentucky's courts could similarly find that the Defendants' registration with the CFTC does not preempt state oversight through the state's interpretation of their own gambling statutes . . . . It is not therefore a sure outcome that the Defendants' federal defense is dispositive to the case.

2026 WL 596107, at *6. The same is true here. Regardless of the merits of Defendants' affirmative defenses, the outcome of this case will ultimately turn on whether Plaintiff can show Defendants' liability under South Carolina law. *Id.*; *see also Ohio Gambling Recovery,* 2026 WL 865788, at *7 ("While Defendants may lodge a Rule 12(b) motion asserting defenses based on federal law, if Plaintiff survives such a motion, federal law will have little impact on the analysis of Plaintiff's Ohio law-based claim."); *Hayden v. Magnolia Plantation Corp.*, No. 2:20-CV-00731-RMG, 2020 WL 996801, at *1 (D.S.C. Mar. 2, 2020) ("A plaintiff's right to relief for a given claim necessarily depends on a question of federal law only when *every* legal theory supporting the claim requires the resolution of a federal issue.").

Finally, as to the fourth factor, the "decision on this particular and very narrow question will not be controlling over numerous other cases." *Mikulski*, 501 F.3d at 571. This case does not present a nearly "pure issue of law" but rather a "fact-bound and situation-specific" one. *Empire*, 547 U.S. at 700-01. Far from putting the entirety of the "Nation's . . . derivatives industry" on trial, DK NOR ¶ 39, "[a]nalysis in this case regarding the impact of federal law on [South Carolina's] Statute of Anne will be limited to parties bringing similar claims under similar circumstances." *Ohio Gambling Recovery,* 2026 WL 865788, at *7. Indeed, there is "only one scenario" in which a decision on Defendants' affirmative CEA defense here "would control, and that is a factually identical cause of action brought by a third party challenging the Defendants' actions in [South Carolina]." *Kentucky Gambling Recovery*, 2026 WL 596107, at *7.

***Third***, requiring Plaintiff's claims to be heard in a "federal forum" would disturb the "congressionally approved balance of federal and state judicial responsibilities." The determination of whether Defendants' activities violate South Carolina gambling law falls squarely within the jurisdiction of a South Carolina state court. *Johnson v. Collins Ent. Co.*, 199 F.3d 710, 720 (4th Cir. 1999) ("The regulation of gambling enterprises lies at the heart of the state's police power."). Forcing a state cause of action derived from state gambling laws into federal court would deprive South Carolina of its sovereign authority to interpret its own laws and upset the federalist balance enshrined in the Tenth Amendment. *See Ohio Gambling Recovery*, 2026 WL 865788, at *8 ("That federal law-based defenses may be available to Defendants does not outweigh the state of Ohio's interests in enforcing its own gambling statutes."); *Kentucky Gambling Recovery LLC*, 2026 WL 596107, at *7 ("[P]laintiff does not argue that Defendants have violated the CEA. It argues that the Defendants' behavior violates Kentucky's gambling laws . . . . The Court finds that the balance of judicial interests weighs heavily in favor of the state courts, who are better prepared

to interpret their own law in this admittedly gray area.”). *See also Magnolia Plantation Corp.*, 2020 WL 996801, at *2 (even if the federal question raised by defendant was “substantial,” remand was appropriate where, *inter alia*, plaintiff’s claim was “fundamentally a state common law cause of action.”).

### B. If the Statute of Anne is a *qui tam* statute, the real parties in interest are not completely diverse.

For the reasons discussed above, even if the South Carolina Statute of Anne were a *qui tam* statute, the standing requirements of Article III would not be satisfied. *See supra* at 10-11. But if the Court were to find constitutional standing under such a theory, the Court would still lack subject matter jurisdiction, since the Statute of Anne being a *qui tam* statute would eliminate original jurisdiction under the diversity jurisdiction statute.

For purposes of analyzing the diversity jurisdiction statute, the relevant inquiry is the citizenship of the real parties in interest, not the citizenship of the formally named parties (where Defendants focus their analysis). *Navarro Sav. Ass’n v. Lee*, 446 U.S. 458, 461 (1980). A real party in interest is “an actor with a substantive right whose interests may be represented in litigation by another.” *U.S. ex rel. Eisenstein v. City of New York, New York*, 556 U.S. 928, 934–35 (2009). Because “a State’s presence as a party will destroy complete diversity,” the Supreme Court has cautioned courts to “look behind the pleadings to ensure that parties are not improperly creating or destroying diversity jurisdiction.” *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 174 (2014)

Such caution is warranted here. If the Statute of Anne is a *qui tam* statute, then the state of South Carolina is a real party in interest—because states are “real parties in interest in a state-law *qui tam* action.” *United States ex rel. Mohajer v. Omnicare, Inc.*, 525 F. Supp. 3d 447, 462 (S.D.N.Y. 2021). This would “destroy complete diversity,” *Hood*, 571 U.S. at 174, because “for

purposes of diversity jurisdiction, a State is not a 'citizen.'" *S.C. Dep't of Disabilities & Special Needs v. Hoover Universal, Inc.*, 535 F.3d 300, 303 (4th Cir. 2008).

Federal courts have repeatedly held that there is no diversity jurisdiction over state law *qui tam* claims. *See, e.g.*, *Indiana ex rel. Harmeyer v. Kroger Co.*, 2017 WL 2544111, at *3 (S.D. Ind. June 13, 2017); *United States ex rel. Mohajer v. Omnicare, Inc.*, 525 F. Supp. 3d 447 (S.D.N.Y. 2021); *New Mexico ex rel. Nat'l Educ. Ass'n of New Mexico, Inc. v. Austin Cap. Mgmt. Ltd.*, 671 F. Supp. 2d 1248, 1253 (D.N.M. 2009). This includes cases where, as here, the state has not formally intervened in the case, *see State of California, ex rel. Servs. Disabled Veterans Telecommunications v. MCI Telecommunications Corp.*, 185 F.3d 868 (9th Cir. 1999); cases where the state is one of several real parties in interest on the plaintiff's side, *see In re Fresenius Granuflo/NaturaLyte Dialysate Prods. Liab. Litig.*, 76 F. Supp. 3d 268, 273 (D. Mass. 2015); and cases where the court has not definitively determined whether or not the statute at issue is a *qui tam* statute, *Hotze Health Wellness Ctr. Int'l One*, 2018 WL 11277666, at *1.

*DC Gambling Recovery* does not provide a compelling counterweight. The court there did not conduct its own analysis of the real parties in interest, looking only at the citizenship of the named parties.[4] *DC Gambling Recovery*, 2026 WL 850330, *3 n. 6. But "[d]iversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants." *City of Indianapolis v. Chase Nat. Bank*, 314 U.S. 63, 69 (1941).

### III. This Court does not have jurisdiction under the federal officer removal statute.

In addition to the two grounds for jurisdiction set out by the DraftKings Defendants, the Polymarket Defendants argue that this Court has jurisdiction under 28 U.S.C. § 1442(a), the federal

---

[4] The District of Columbia is treated as a state for the purpose of the diversity jurisdiction analysis. *Long v. D.C.*, 820 F.2d 409, 414 (D.C. Cir. 1987).

officer removal statute. PM NOR ¶ 20. To remove a case under Section 1442(a)(1), a *private* defendant must show: "(1) that it acted under a federal officer; (2) that it has a colorable federal defense; and (3) that the charged conduct was carried out for or in relation to the asserted official authority." *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 228 (4th Cir. 2022) (cleaned up). Polymarket Defendants argue that they meet these criteria because Polymarket US is regulated by the CFTC. Specifically, they claim that Polymarket US "acts under" the CFTC because CFTC regulations render it a self-regulatory organization that "exercises delegated government discretion." PM NOR ¶ 27.

Even if the Polymarket Defendants are correct in their assessment of Polymarket US's regulatory status, their argument falls short. They make no allegations that Polymarket US has any contractual relationship, direct or indirect, with the CFTC, or that it has any legal obligations to the CFTC beyond those set out in federal laws and regulations. Instead, all of the supposedly delegated functions they identify, PM NOR ¶ 29, do nothing more than "demonstrate compliance" with federal regulations. *Nevada ex rel. Nevada Gaming Control Bd. v. Blockratize Inc.*, 2026 WL 579376, at *3 (D. Nev. Mar. 2, 2026). This is not enough to fulfill the "acting under" requirement.

"[S]imply *complying* with the law" does not show that a defendant is acting under a federal officer, "no matter how detailed the government regulation or how intensely the entity's activities are supervised and monitored." *Mayor & City Council of Baltimore*, 31 F.4th at 229 (emphasis original). The Fourth Circuit's holding in *West Virginia State University Board of Governors v. Dow Chemical Co.*, 23 F.4th 288 (4th Cir. 2022) is particularly instructive. Like the Polymarket Defendants here, the defendants in that case argued they were acting under a federal officer because they were required to comply with federal regulations to get the regulator's approval, could not operate without the regulator's approval, and were subject to ongoing monitoring by the

regulator. *Id.* at 302-303. The Fourth Circuit found that the defendants did not satisfy the "acting under" requirement because the relationship between the defendant and the federal agency was just "one of statutory compliance," rather than anything contractual. *Id.* at 302. The same is true of the relationship between Polymarket US and the CFTC.

The cases cited by Polymarket Defendants emphasize the necessity of a contractual relationship to federal officer removal. Both involved defendants who were federal subcontractors and thereby subjected to direct federal oversight, through either federal contract requirements or audit and inspection rights. *See County. Bd. of Arlington County, Virginia v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 253 (4th Cir. 2021) (defendant administered a federal contract that included specific requirements for subcontractors, could not have been fulfilled without the use of subcontractors, and subjected subcontractors to direct oversight by the government agency to enforce the contract terms); *Virginia ex rel. Hunt* v. *CaremarkPCS Health, L.L.C.*, 140 F.4th 188, 197 (4th Cir. 2025) (defendant provided services pursuant to federal government contract requirements). The Polymarket Defendants do not identify a single decision holding that regulatory compliance is sufficient to show that a defendant is acting under a federal officer. Nor can they, given the Fourth Circuit's clear instructions to the contrary.

## CONCLUSION

For these reasons, Plaintiff respectfully requests that this Court remand this case to South Carolina state court.

Dated this 15th day of October, 2026.

**MOTLEY RICE LLC**

/s/ T. David Hoyle
T. David Hoyle (Fed. ID No. 9928)
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Phone: (843) 216-9000
dhoyle@motleyrice.com

William H. Narwold (Fed. ID No. 1730)
20 Church St, 17th Floor
Harford, CT 06103
Phone: (860) 733-6471
bnarwold@motleyrice.com

Previn Warren
Abigail Burman
Nelson Drake
*Admitted Pro Hac Vice*
401 9th St. NW, Suite 630
Washington, DC 20004
Phone: (202) 386-9610
pwarren@motleyrice.com
aburman@motleyrice.com
ndrake@motleyrice.com

Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

Respectfully submitted,

**MOTLEY RICE LLC**

/s/ T. David Hoyle
T. David Hoyle (Fed. ID No. 9928)
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Phone: (843) 216-9000
dhoyle@motleyrice.com

William H. Narwold (Fed. ID No. 1730)
20 Church St, 17th Floor
Harford, CT 06103
Phone: (860) 733-6471
bnarwold@motleyrice.com

Previn Warren
Abigail Burman
Nelson Drake
*Admitted Pro Hac Vice*
401 9th St. NW, Suite 630
Washington, DC 20004
Phone: (202) 386-9610
pwarren@motleyrice.com
aburman@motleyrice.com
ndrake@motleyrice.com

Counsel for Plaintiff